THOMAS GRISTOCK v. THE ROYAL INSURANCE COMPANY.

[See 84 Mich. 161.]

*Fire insurance—Oral application—Waiver—Proofs of loss.*

1. The applicant for insurance has a right to rely upon the assumption that his policy will be in accordance with his oral application, and, if the insurer desires to make the policy in anything different, it must, in order to make it binding upon the assured, call his attention to the clauses differing from the application.

2. After a careful examination of this case as presented on the rehearing, no reason is seen for reversing the former decision, which is fully reported in 84 Mich. 161.

Rehearing, on application of defendant, of case reported in 84 Mich. 161. Argued June 2, 1891. Decided July 28, 1891. The facts are stated in the former opinion, which is affirmed.

*Norris & Norris,* for appellant.

*Spaulding & Walbridge* and *Griswold & High,* for plaintiff.

GRANT, J. The learned counsel for the defendant in their brief on this hearing insist that certain clauses of the policy were omitted in the former opinion (84 Mich. 161), and that similar clauses were never before passed upon in this Court. The first clause referred to is the one containing conditions as to mortgage. The policy provided that the company should not be liable—

"If the property * * * is or shall become mortgaged * * * without the assured's written notice to, and without the written permission of, this company indorsed on this policy."

In such case the policy was to be void. As stated in the former opinion, there was no written application, and defendant's agent was informed by the plaintiff of the mortgage existing upon the property. In obtaining this insurance, this agent represented the defendant, and not the plaintiff. The plaintiff had concealed nothing, but, on the contrary, had disclosed to the defendant, through its agent, the exact condition of the property. In *O'Brien v. Insurance Co.*, 52 Mich. 131, the policy provided that the company should not be liable *if there was any omission* by the assured of the title, incumbrance, etc. The assured had made no statement in regard to any mortgage, although the agent testified that, according to his recollection, he asked him about it. The Court say:

"The circuit judge charged the jury, in substance, that if they found that the policy was not read to the plaintiff before it was delivered to him, and that the agent gave it to him on his oral application, without directing his attention to the conditions respecting incumbrance, and that the plaintiff, on receiving the policy, was ignorant of them, and that nothing was said, either by the agent or the plaintiff, before or after the emanation of the policy, they might then consider the existence of the mortgage as no impediment to recovery."

This charge was sustained, and the Court add:

"If the applicant is guilty of no misleading conduct, the insurer in such a case must be taken to assume the risk incident to the undisclosed incumbrance."

Why, with the more reason, should it not be held to assume the risk of a disclosed incumbrance, which, for some reason, it has not seen fit to indorse upon the policy? The only difference between that case and this one is that this policy required a written notice by the assured, and permission to be indorsed upon the policy. But, if the attention of the assured in that case had been called to the condition, it would as certainly have avoided his policy as would the clause now under consideration. The principle is the same in both cases, and both must be governed by the same rule. Plaintiff had a right to rely upon the assumption that his policy would be in accordance with the terms of his oral application. If the defendant desired to make it anything different, it should, in order to make it binding upon plaintiff, under the authorities in this State, have called his attention to those clauses which differed from the oral application. It was held in *Crouse v. Insurance Co.*, 79 Mich. 249:

"The restriction upon the agent, being in the policy and not in the application, cannot be construed to refer to the acts or knowledge of the agent prior to the delivery of the policy."

In that case there was a written application, in which there was an absolute misrepresentation by the assured as to the condition of the property. By the very terms of the policy, it was rendered void if the assured was not the sole, absolute, unconditional owner of the property, and if that fact was not expressed in the written portion of the policy. It was also expressly covenanted that any waiver, to be valid, must be indorsed upon the policy. The assured had correctly stated to the agent who wrote

out the application the condition of the title, but the agent had failed to put it in the application. The terms of that policy were as strong and explicit as are the terms of the one here involved. A reading of the policy in that case would have shown the assured that his title was not "expressed in the written portion of the policy," and that this, by its terms, rendered the policy void. That case, in my judgment, clearly rules the present one.

We deem it unnecessary to discuss again the questions of appraisal and award and the waiver involved. The acts of the adjuster, Stark, whose general authority was ample to adjust the loss, were binding upon the defendant. The law does not require unnecessary things to be done. So far as the plaintiff and the adjuster had agreed upon the amount of the loss, this dispensed with the necessity for any formal proofs. So far as the loss on the house was concerned, this they had agreed to arbitrate. But the defendant failed to perform its agreement in this respect, and then denied all liability. The concession made upon the trial as to the adjuster's authority is stated in the former opinion. If his authority was limited, this was not known to the plaintiff's agent until he had received the letter of December 12, after the time limited for making the proofs had expired. During the time spent in examining and adjusting the loss, the adjuster said nothing about making the proofs called for by the policy. After agreeing to the arbitration, he wrote on October 29 to Faxon, defendant's local agent, saying that other losses would demand his attention for perhaps 10 days, and that he would then notify Faxon, or perhaps surprise him some fine morning by dropping in on him without notice, and adds:

"Kindly notify Mr. Gristock of the change in plan, but say nothing of surprising him. Keep your eyes wide open, and please make memorandum of any information

you may receive, and also give me all the information."

Mr. Faxon notified the plaintiff's agent as requested. The agent inquired of Faxon if it would be necessary for him to make out the proofs of loss required by the policy, to which Faxon replied that it would not. There is no intimation upon the record that the loss was not an honest one. Whatever the purpose of the defendant's agents was, the effect was to mislead plaintiff's agent, who apparently acted in the utmost good faith. It would, in my judgment, be a reproach upon the law to hold that, under these circumstances, the defendant was not estopped from insisting upon the written condition of its policy, requiring a waiver to be indorsed upon the policy, and signed by the agent making it. It was my own opinion, upon the former hearing, that the court should have instructed the jury that this condition of the policy was waived; but my brethren thought that the question was properly submitted to the jury, in which opinion I finally concurred. I see no reason, after a careful examination, why our former decision should be reversed.

MORSE, McGRATH, and LONG, JJ., concurred with GRANT, J.

CHAMPLIN, C. J. *(dissenting)*. The question in this case, to my mind, turns upon the rights of the parties under the contract of insurance, and is raised under the following provisions contained in the policy:

"12. The assured, under this policy, sustaining loss or damage by fire, shall forthwith give notice in writing of said loss to the company, and shall within 30 days of date of said fire render a particular account of such loss, signed and sworn to by the said assured. Failing so to do within 30 days, this insurance shall become and be null and void. Such account shall state whether any and what other insurance has been made covering the property herein described, giving copies of the written portions of all policies thereon; stating also the actual

cash value of the property, and the interest of the assured therein, and for what purpose and by whom the buildings herein described, or containing the property herein specified, and the several parts thereof, were used at the time of the fire; when and how the fire originated; and shall also, if required, produce a confirmatory certificate of the chief of the fire department, or his assistant, or, if no fire department exists in the locality, then a certificate, under the hand and seal of a magistrate (nearest the place of the fire), not concerned in the loss, as a creditor or otherwise, nor related to the assured, stating that he has examined the circumstances attending the loss, and knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained the loss on the property herein specified to the extent alleged in such account.

"13. When the property herein described, whether real or personal, is damaged as the result of fire, the assured shall forthwith cause it to be put in order, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged, and shall cause an inventory to be made of the whole, and furnish the same to the company, naming the quantity, quality, and cost of each article. The assured shall, if required, remove all worthless *débris* or remains. The amount of sound value and of the damage shall then be determined by mutual agreement between the company and the assured; or, failing thus to agree, the assured hereby covenants that the same shall then be immediately ascertained by a detailed appraisal by competent persons not interested in the loss as creditors or otherwise, nor related to the assured, one to be appointed by the assured, and one by the company (which two persons shall, in case of disagreement, appoint a third, which third appraiser, if chosen, shall be authorized to appraise, acting conjointly with the other appraisers, upon such items only as such first appraisers may disagree upon), and their award, or the award of any two of them, rendered in detail in writing, and made under oath, shall be binding upon the company and the assured as to the amount of such loss or damage, but shall not decide the legal liability of the company under this policy. One-half of the appraisers' fees shall be paid by the assured.

"14. The assured shall, if required by any person

appointed by the company, either before or after furnishing the proofs of loss herein required, submit to an examination or examinations under oath, and subscribe to an account of such examination or examinations when reduced to writing, and also produce all books of account, bills, invoices, or vouchers concerning the property in question, and lodge the same with such person at the office of the company, and permit extracts and copies thereof to be made. The assured shall also produce certified copies of all bills and invoices the originals of which have been lost, and shall exhibit all that remains of the property herein described, damaged or not damaged. If the claim be for a building destroyed or damaged by fire, the assured, if required so to do, shall, as a part of the proofs of loss, furnish the company with plans and specifications of such buildings, and shall consent to an appraisal of loss or damage to said building, as above provided. And until such notice aforesaid is given, particular account and certificate produced, examinations and appraisals be had, and plans and specifications be furnished, the loss shall not be payable.

"15. The company reserves the option to take the whole or any part of the movable or other property herein specified at its appraised value, or to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, giving notice of their intention so to do within 60 days after the receipt of the proofs of loss herein required.    *    *    *    And any failure or neglect to fully comply with all the require-. ments of this policy, as specified, shall entail forfeiture of all claim, and shall be a complete bar to any recovery for loss under this policy.

"16. The insurance under this policy is made subject to the following conditions, limitations, and requirements, and to the classes of hazards and *memoranda* printed on the back of this policy, which are hereby made a part hereof; and the assured, by the acceptance of this policy, agrees to all of the conditions and requirements thereof.

"And it is hereby expressly provided that no suit or action against this company for the recovery of any claim, under or by virtue of this policy, shall be sustainable in any court of law or equity until after an award shall have been obtained fixing the amount of such claim in the manner above provided, nor unless such suit or action shall be commenced within twelve months next

after the fire shall have occurred; and, should any suit or action be commenced against this company after the expiration of the aforesaid twelve months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation or other law to the contrary notwithstanding. * *

"Agents of this company shall have the right of free access to the *débris* of property herein described, which may be damaged as the result of fire, and to the premises of the assured, for the purpose of investigating any claim or assumed claim under this policy; and no examination of assured, and no action whatsoever taken by the company so to investigate the same, and no opinion expressed as to liability, shall operate as a waiver of any rights of this company, or be held to be any admission of liability under this policy."

Then this contract also contained the following express agreements: The amount of loss—

"To be paid after the loss shall have been ascertained in accordance with the terms and conditions of this policy, and satisfactory proofs of the same shall have been made by the assured, and received at the office of the company."

"Agents have no authority to bind this company, except strictly in accordance with the terms, conditions, limitations, requirements, and the actual issue of this policy; nor shall any knowledge, act, or statement of any agent of this company be held or claimed to have waived any of the conditions or stipulations of this policy, unless waiver be indorsed hereon in writing, and be signed by such agent; and this company shall not be liable for indemnity, except as herein specified."

There is nothing in the policy of the law which precludes parties *sui juris* from entering into contracts of insurance containing the foregoing stipulations, and there is no reason why the contract embraced in the policy of insurance should not be enforced by courts to the same extent, and under the same rules of construction, as other valid contracts. There is usually an element of misfortune which naturally excites sympathy on behalf of the

assured, and there are many stringent and technical conditions inserted in such contracts which have a tendency to prejudice the fair-minded against the insurer; but of necessity, owing to attempts at fraud on the part of the assured, and the difficulty of establishing misconduct of the assured (the insurers in some cases being absent a long distance from the scene of the fire), the insurance companies have been compelled for their own protection, and the protection of honest policy-holders, to insert in the policy such provisions as they deem best suited to guard themselves against the cupidity and dishonesty of persons who insure for the purpose of burning the property insured, and collecting the loss from the insurers. It is apparent that all the investigation the company can make as to the extent of the losses or causes of the fire . must be after the fire has occurred; and if they are to be held liable because they have instituted any investigation relative to the loss, and of its extent, or the origin of the fire, then they had better issue a policy without any conditions, and merely agree that they will pay all losses in the event of fire, however dishonest the assured may be in effecting the insurance, or burning the property after the insurance is effected.

Courts have construed the acts of the companies, when seeking to ascertain the cause and extent of loss, as a waiver of the express conditions of the policies relative to furnishing proofs of loss and of the cause of the fire, so that these conditions have been rendered useless or nugatory, and the companies have been compelled so to mould their contracts as to permit such investigation, and require the active assistance of the assured, and require the express agreement that such investigation, appraisal, and award shall not be deemed a waiver of the other conditions of the policy, and that no act or statement of the agent shall be held or claimed to be a

waiver of any of the conditions or stipulations of the policy unless indorsed in writing on the policy. This policy contains the express stipulation that—

"Agents of this company shall have the right of free access to the *débris* of property herein described, which may be damaged as the result of fire, and to the premises of the assured, for the purpose of investigating any claim or assumed claim under this policy; and no examination of assured, and no action whatsoever taken by the company so to investigate the same, and no opinion expressed as to liability, shall operate as a waiver of any rights of this company, or be held to be any admission of liability under this policy."

The testimony is undisputed that the adjuster of the company, and the son of Mr. Gristock, acting for him, had agreed upon and adjusted the losses upon all the personal property destroyed, and were unable to agree upon the value of the building, and this they were to leave to arbitration, under the conditions of the policy. This policy requires proofs of loss and the circumstances of the fire to be made and delivered to the company within 30 days. The act of the adjuster is independent of this requirement. The object is to ascertain the extent and amount of losses, but not in any way to affect the liability of the company to pay the amount of such losses. This liability does not depend upon the amount of the loss, but upon the terms and conditions of the policy under which it agreed to be liable. The adjustment and the arbitration may be made after the 30 days limited within which the proofs of loss shall be made. Before the arrangements in reference to the award had been completed, the adjuster was called away. A time was mentioned when he would return, which was within the 30 days within which proofs of loss should be furnished according to the terms of the policy. Before the day arrived he sent word that he should be detained, and

could not be there at the time fixed, and no other time was named, and he did not again return. The time limited for the filing of proofs of loss was suffered by the assured to expire, and none were furnished; and the question is, were the acts of the adjuster a waiver of such proofs of loss by the company? It is not claimed that there was any express authority conferred upon the adjuster to waive the condition requiring proofs of loss to be filed within 30 days, nor is it claimed that the adjuster made use of any language which assumed to waive such proofs.

It is claimed that the adjuster by his acts had lulled the assured into the belief that no proofs of loss would be required,—that the adjustment and appraisal would take the place of and do away with the necessity of such proofs; or that, at any rate, in fairness to the assured, the adjuster or agent should have told the assured that he must furnish the proofs within the 30 days at his peril, and, not having done so, it would be unjust to deprive the party of his remedy for the non-compliance with that condition. The vital point, assuming the adjuster had power to waive (which is not shown), is, was the assured lulled into non-action, and neglected to furnish proofs of loss, because of what had transpired, such action inducing the belief in his mind that it was not necessary to furnish them within the time limited? The facts are decidedly against the plaintiff upon this point. Instead of being lulled into security, relying upon the acts of the adjuster and upon what had been done, he sought and obtained legal advice as to whether he was required, in view of what had been done, to furnish proofs of loss within the 30 days, and he states that he was advised that he was not. He did not, however, as appears by the record, show to his attorney the contract between him and defendant, but received his advice

upon his statement to him; so that, instead of having been misled to his injury by the defendant or its agents, he relied upon the advice derived from his own attorney, upon his own statement of the facts. To me it savors of injustice to hold that the defendant was estopped by its conduct, or had waived the rights secured to it by the contract, under such a state of facts. It cannot be urged that the insurance was so recent that plaintiff had not had an opportunity to inspect the policy, as it appears that he had held a policy in this company prior to this, and for which this was a renewal.

The judgment should be reversed.