INDUSTRO MOTIVE CORPORATION v MORRIS AGENCY, INC.

1. INSURANCE—ESTOPPEL TO DENY COVERAGE—BUSINESS-INTERRUPTION
   LOSSES—BINDER—DUPLICATE COVERAGE.

   An insurance agency and an insurance company are estopped to
   deny liability under a fire insurance policy for $20,000 of
   business-interruption losses, which were not covered by the
   terms of the policy but which had been covered under the
   plaintiff insured's policy with another company, where: (1) the
   agency while acting on the insurer's behalf promised plaintiff
   that the insurer could provide coverage identical to plaintiff's
   existing insurance but at a lower rate; (2) both the agency and
   the insurer knew of plaintiff's desire for a duplication of
   coverage; (3) the insurer did not repudiate the binder which
   offered duplicate protection; (4) neither the agency nor the
   insurer expressly apprised plaintiff of the change in coverage;
   and (5) the plaintiff relied upon the agency's representations to
   cancel their existing insurance.

2. INSURANCE—ORAL APPLICATION—DIFFERING TERMS—LIABILITY OF
   INSURER.

   An insured has a right to rely upon the assumption that his
   policy will be in accordance with the terms of his oral applica-
   tion; if the insurer desires to make it anything different, it
   should, in order to make it binding upon the insured, call his
   attention to those clauses which differ from the oral applica-
   tion.

3. INSURANCE—OBLIGATION TO READ POLICY—REASONABLE TIME.

   An insured generally has an obligation to read his policy and to
   air discrepancies in coverage within a reasonable time.

4. INSURANCE—RENEWAL—REDUCTION IN COVERAGE—NOTICE—LIABIL-
   ITY OF INSURER.

   While the renewal of an insurance policy constitutes a separate
   contract to be governed by general contract principles, an

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 43 Am Jur 2d, Insurance § 216 et seq.

[3] 43 Am Jur 2d, Insurance § 203.

[4] 43 Am Jur 2d, Insurance § 384.

insurance company is bound by the greater coverage in an earlier policy where the renewal contract is issued without calling to the insured's attention a reduction in policy coverage.

Appeal from Oakland, Arthur E. Moore, J. Submitted April 12, 1977, at Detroit. (Docket Nos. 28860, 29160.) Decided June 20, 1977.

Complaint by Industro Motive Corporation and First of Troy Corporation against Morris Agency, Inc., and Royal Globe Insurance Company for recovery under an insurance policy of business-interruption losses after a fire. Summary judgment for plaintiffs. Defendants appeal. Affirmed.

*Dee Edwards*, for plaintiffs.

*Foster, Meadows & Ballard* (by *John Arthur Hamilton*), for Morris Agency, Inc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P. C.* (by *Stanley A. Prokop*), for Royal Globe Insurance Company.

Before: R. B. BURNS, P. J., and T. M. BURNS and D. C. RILEY, JJ.

PER CURIAM. On February 24, 1974, a fire consumed a building along with its contents, and sparked the present controversy. The plaintiffs owned the building; defendant Royal Globe insured it; and defendant Morris Agency served as intermediary between insurer and insured. All claims, save one, have been paid.

The dispute centers on the extent of business-interruption coverage. This, in turn, depends on whether, as plaintiffs contend, an item labeled the percentage-contribution factor for coinsurance amounts to 50 percent, or, as defendants argue, 80

percent. If plaintiffs prevail, they are entitled to an additional $19,129.37. Otherwise, their fire-loss claims are at an end.

To appreciate the questions at bar, we hark back to the early part of 1973. At that time, a different insurer provided coverage on plaintiffs' buildings, including protection for business interruption based on a 50 percent contribution factor. Seeking to supplant this insurer, an employee of the Morris Agency solicited from plaintiffs a synopsis of their present coverage to determine whether the Morris Agency could provide the same coverage at a lower rate. In furnishing the synopsis, plaintiffs orally agreed with the agent to drop their present insurer if the Morris Agency could supply identical coverage at a reduced rate. The agency then submitted the synopsis, along with an application that was silent on percentage-contribution, to defendant Royal Globe for a price quotation.

Aware that plaintiffs desired "a matching quote", *i.e.,* one providing protection identical to their present coverage, an employee of Royal Globe informed the Morris Agency that the insurer could not write business-interruption coverage unless the percentage-contribution factor exceeded 70 percent. Morris Agency denies that it was so informed. At any rate, neither defendant expressly informed plaintiffs that the insurer could not replicate plaintiffs' existing coverage; instead, Royal Globe issued a quote (based on an 80 percent contribution factor) which undercut the price of plaintiffs' then existing coverage. The Morris Agency transmitted same to plaintiffs.

On plaintiffs' acceptance of the quote, the agency sent a binder to plaintiffs with a copy to Royal Globe. The binder duplicated plaintiffs' existing coverage and expressly provided for a 50

percent contribution factor, as well as an effective date of April 14, 1973. In fine print, the binder indicated that it would expire within 30 days.

Upon receiving the binder, plaintiffs cancelled their existing coverage. Although also in receipt of the binder, Royal Globe did not object either to plaintiffs or to defendant agency regarding the discrepancy in percentage-contribution.

When Royal Globe ultimately issued a policy on August 7, 1973, the following documents were at its disposal:

a) The synopsis of plaintiffs' previous coverage which showed 50 percent contribution;

b) The binder which showed 50 percent contribution;

c) An application form from Morris Agency, not signed by plaintiffs, with no contribution rate specified; and

d) An application form from Morris Agency, not signed by plaintiffs, which shows an 80 percent contribution factor.[1]

Royal Globe then sent the policy, showing an 80 percent contribution factor, to Mr. Morris, the president of the agency, who then personally delivered the policy to Mr. Michaels, a representative of the plaintiffs, and reviewed coverage with him. Although Morris noted an error in the policy relating to the description of plaintiffs' buildings, the change in percentage-contribution "escaped [his] attention". Thus, aside from the extent to which the policy itself is notice, neither defendant ever informed plaintiffs of the change in percent-

---

[1] Royal Globe alleges, and the Morris Agency disputes, that the 80 percent figure is in the handwriting of a Morris Agency employee. For purposes of the present decision, we need not and do not reach this issue. Similarly, we do not resolve whether the insurer ever advised its agent of its inability to provide business-interruption coverage with a contribution factor of less than 70 percent.

age-contribution; and plaintiffs did not learn of this change until after the fire.

Upon the insurer's refusal to satisfy claims based on 50 percent contribution, plaintiffs commenced suit and eventually persuaded the lower court to grant their motion for summary judgment, GCR 1963, 117.2(3), against both defendants.

In so doing, the lower court declined Royal Globe's motion for summary judgment, and concluded as a matter of law that defendants were estopped to deny liability for plaintiffs' business-interruption loss. The court reasoned that defendants could not be heard to assert the policy's 80 percent contribution factor where plaintiffs cancelled their former coverage in reliance on (1) the oral agreement with the agency and (2) the binder —both of which promised coverage identical to plaintiffs' prior insurance. The court further concluded that the binder constituted a contract for temporary insurance which imposed on Royal Globe the duty to issue a permanent policy in accordance with the binder.

Following an unsuccessful attempt urging rehearing, defendants separately pursued appeals as of right.

Royal Globe contends that the insurance policy represents the final embodiment of the parties' undertaking; that parol proof (the oral agreement and binder) may not be used to contradict the policy; that the binder, by its terms, lapsed prior to the fire; that plaintiffs had an obligation to read the policy; and that if anyone is liable it is the Morris Agency, for drafting the binder without Royal Globe's authorization.

Morris Agency argues that an agent for a disclosed principal cannot be held personally liable to plaintiffs.

Based on the circumstances just recited, we believe both defendants are estopped to deny liability. See *Kaminskas v Litnianski,* 51 Mich App 40, 44–46; 214 NW2d 331 (1973), *Rorick v State Mutual Rodded Fire Insurance Co,* 263 Mich 169; 248 NW 584 (1933). The facts establish:

(1) that defendant agency while acting on the insurer's behalf promised plaintiffs that the insurer could provide coverage identical to plaintiffs' existing insurance but at a lower rate;

(2) that both defendants knew of plaintiffs' desires for a duplication of coverage;

(3) that defendant insurer did not repudiate the binder which offered duplicate protection;

(4) that neither defendant expressly apprised plaintiffs of the change in coverage;

(5) that plaintiffs relied upon the agency's representations to cancel their existing insurance; and

(6) that plaintiffs suffered approximately $20,000 of business-interruption loss which would otherwise have been covered under their former insurance.

Thus, the essential elements of estoppel have been satisfied. See *The Vogue v Shopping Centers, Inc,* 58 Mich App 421, 424; 228 NW2d 403 (1975).

In our view, the present case is no different, in essential detail, from *Gristock v The Royal Insurance Co,* 87 Mich 428, 430; 49 NW 634 (1891), in which the Supreme Court observed:

"Plaintiff had a right to rely upon the assumption that his policy would be in accordance with the terms of his oral application. If the defendant [insurer] desired to make it anything different, it should, in order to make it binding upon plaintiff, under the authorities in this State, have called his attention to those clauses which differed from the oral application."

Similarly, the instant plaintiffs had a right to rely on the synopsis they furnished defendants and on the binder they received, unless and until their attention was directed to the changes in coverage. Especially is this so where the agency personally reviews the policy with plaintiffs, notes one error, but fails to apprehend the diminished coverage.

Thus, these factors, taken together, remove this case from the rule that an insured has an obligation to read the policy and to air discrepancies in coverage within a reasonable time. See *House v Billman,* 340 Mich 621; 66 NW2d 213 (1954), *Russell v State Farm Mutual Automobile Insurance Co,* 47 Mich App 677; 209 NW2d 815 (1973). Rather, we liken the plaintiffs' duty to read the insurance contract to that of an insured under a renewal policy; for in effect plaintiffs sought no more than to revive coverage, albeit with another insurer, identical to their former insurance.

As the Tenth Circuit held in *Government Employees Insurance Co v United States,* 400 F2d 172, 174–175 (CA 10, 1968):

"While the renewal of an insurance policy constitutes a separate contract to be governed by general contract principles, it is the general rule that an insurance company is bound by the greater coverage in an earlier policy where the renewal contract is issued without calling to the insured's attention a reduction in policy coverage." (Footnotes omitted.)

Similarly, see 17 Couch, Insurance 2d, § 68:63, pp 699–700, 91 ALR2d 546.

In the present case, the insurer does not claim that it directed the insured to read the policy carefully, or that it appended the change in percentage-contribution as a separate addition to the contract. *Cf., Government Employees, supra.* On

the contrary, the defending parties admit their failure to inform plaintiffs of the change in coverage.

Hence, on the facts at bar, we affirm the lower court's summary judgment for plaintiffs.

Costs to appellees.