

Floyd S. Westcott, Thomas Emery, Seavitt, Westcott, Stowe & Magnuson, Detroit, Mich., for plaintiff/counter-defendant.

Paul A. Rosen, Detroit, Mich., for Randy Wayne Foster.

Joseph H. DeLaurentis, Colombo, DeLaurentis & Trager, P.C., Wyandotte, Mich., for defendant/counter-plaintiff and third party plaintiff.

### WESTERN CASUALTY AND SURETY COMPANY, Plaintiff/Counter-Defendant,

v.

### Donald SLITER, Sr., Defendant/Counter-Plaintiff and Third Party Plaintiff,

### Floyd Slagel, Individually, Third Party Defendant.

Civ. A. No. 82–71506.

United States District Court, E.D. Michigan, S.D.

Jan. 26, 1983.

## OPINION

FEIKENS, Chief Judge.

Plaintiff Western Casualty and Surety Company ("Western") moves for summary judgment in this declaratory judgment action brought to determine the scope of coverage of an insurance policy it issued to defendant Donald Sliter, Sr. ("Sliter"). As explained below, I find that coverage does not extend to the situation presented.

Sliter is in the business of installing swimming pools. In 1973 he purchased a liability insurance policy from Western through his insurance agent, Floyd Slagel ("Slagel").[1] Sliter alleges he informed Sla-

1. Slagel is a third party defendant in this action. A default was entered against him by the

Clerk on December 22, 1982.

gel he desired full coverage, including products liability coverage. Slagel subsequently obtained the subject policy from Western. He delivered it to Sliter and informed him it provided the coverage Sliter desired. The policy as issued does not provide for products liability coverage. Two types of products liability coverage were available as riders to the policy, "products hazard" and "completed operations hazard." Either rider would have provided the coverage allegedly requested.

In 1974 Sliter constructed a swimming pool at the home of Lloyd Failing. In 1979, Randy Wayne Foster ("Foster") dove into the pool and struck bottom. His spinal cord was severely injured, and he became a quadriplegic. Foster sued Sliter alleging tortious conduct in the design and installation of the pool. Foster's action is pending in state court.[2]

Sliter asked Western to defend him against Foster's claim, and Western brought this declaratory judgment action for a determination of coverage. Sliter subsequently cross-claimed against Western and third party-claimed against Slagel asking that they be required to defend Foster's action. Sliter alleges that because he relied on Slagel's representation that the policy included products liability coverage, Western is estopped from denying coverage. He also asks that Slagel be similarly estopped. Finally Sliter alleges Slagel is liable in negligence, and that Western is vicariously liable as principal.

Sliter does not allege that Slagel asked Western to provide products liability coverage. There is no contention that Western itself was negligent. Thus, the question becomes whether an insurer is estopped from denying coverage when, due to an agent's negligence, it was not informed such coverage was desired.

Generally, an insured is assumed to have read the policy. He is held to be aware of its contents. *Wierengo v. American Fire Ins. Co.,* 98 Mich. 621, 626, 57 N.W. 833 (1894). The insured should "read the policy and raise questions concerning coverage within a reasonable time after the issuance of the policy." *Parmet Homes, Inc. v. Republic Ins. Co.,* 111 Mich.App. 140, 145, 314 N.W.2d 453 (1981). Applying these rules, Sliter would be bound by the terms of the policy and summary judgment in favor of Western would be proper.

However, Sliter contends that Slagel's assertion that he had obtained products liability coverage negates the duty to read. Thus, Sliter contends, Slagel's assertions estop Western from denying coverage. In substance Sliter asks that the contract be reformed to correspond with Slagel's assertion that it includes products liability coverage.

Reformation of insurance contracts has been allowed by Michigan courts under limited circumstances. They include mutual mistake,[3] and renewed contracts that have been amended upon renewal without actual notice to the insured.[4] The renewal exception has been extended to situations where an insured changes insurers relying on an agent's promise that the new policy would provide the same coverage as the old.[5]

None of the circumstances justifying reformation have been shown to be present here. Slagel promised to obtain certain coverage and did not do so. Thus this case is governed by *Drogula v. Federal Life Ins. Co.,* 248 Mich. 645, 227 N.W. 692 (1929), where the insured relied on the agent's inaccurate assertion that certain coverage was provided. Drogula, like Sliter, failed to read the policy. When Drogula was injured the insurer refused to pay because his injury was not covered by the terms of the

**2.** *Foster v. Sliter,* No. 82 203 912 NP (Wayne County Cir.Ct. filed February 2, 1982).

**3.** *Progressive Mutual Ins. Co. v. Taylor,* 35 Mich.App. 633, 193 N.W.2d 54 (1971).

**4.** *Parmet Homes v. Republic Ins. Co.,* 111 Mich. App. 140, 145, 314 N.W.2d 453 (1981); *Industro Motive Corp. v. Morris Agency, Inc.,* 76 Mich.App. 390, 396, 256 N.W.2d 607 (1977).

**5.** *Id.*

policy. The court rejected plaintiff's claim that the insurer should be bound by the incorrect representations of the agent. The policy in *Drogula* had a cautionary "Read Your Policy" warning on its face. It also provided explicitly that the policy was the entire insurance contract and that "No agent has the authority to change this policy ...." *Id.* at 649, 227 N.W. 692. The instant policy has similar provisions in paragraphs 9 and 13 of its "Conditions" section, but no "Read Your Policy" warning.

The instructive language of *Drogula*, 245 Mich. at 649–50, 227 N.W. 692, is worth quoting at length:

> Under the circumstances of this case, we think this plainly worded policy should be held to be something more than a mere scrap of paper. The policy is the contract between the insured and the insurer. While, in an effort to protect the insured, somewhat different rules of construction may be applied to insurance policies than to other contracts, the plain, unambiguous provisions of written or printed insurance contracts ought not to be less binding upon the respective parties than like terms of any other contract. Plaintiff's failure to read his contract does not excuse him. In *Cleaver v. Insurance Co.*, 65 Mich. 527, 32 N.W. 660 (8 Am.St.Rep. 908), this court held:
>
> > "The fact that the plaintiff may not have read the printed conditions of his policy, and relied, in ignorance of them, upon the implied or assumed powers of the agent, cannot help him. It was his business to know what his contract of insurance was, and there can be no difference in this respect between an insurance policy and any other contract. In the absence of any fraud in the making of the same ... the insured must be held to a knowledge of the conditions of his policy, as he would be in the case of any other contract or agreement...."
>
> ... We need not go so far as to hold that under no circumstances may the insured secure reformation of his policy because of the fraudulent misrepresentation of insurer's agent in securing the application for the policy. But where, as in this case, the only reason the insured was not apprised of the exact terms of his policy therein, plainly stated, is his own negligence in failing to read his policy when delivered to him or within ten months thereafter, equity will not grant relief. Equity will aid the diligent; but under the circumstances of this case we should not make an entirely new and different contract between the parties under the guise of reformation. If we granted such relief in the instant case, instead of doing equity we would be working an injustice.

Thus, I find that Sliter's reliance on Slagel's incorrect assertions was misplaced. The law in Michigan is that an insurer "is not liable on erroneous representations by an agent as to the extent of coverage of a plainly worded policy, so as to entitle the insured to equitable relief, even though the latter failed to read the instrument."[6] The policy should not and will not be reformed by this Court to provide for coverage not agreed to by the insurer.

Western's motion for summary judgment is granted. The relief prayed for in its complaint is granted. Sliter's counterclaims against Western are dismissed. Sliter's claims against Slagel continue.

---

**6.** 14 Callaghan's Michigan Civil Jurisprudence *Insurance* § 86 (1960), *citing Drogula.*