*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

START-ALL ENTERPRISES, INC.,

      Plaintiff-Appellant,

v

HOME-OWNERS INSURANCE COMPANY and
DOTY AGENCY, INC.,

      Defendants-Appellees.

UNPUBLISHED
March 28, 2024

No. 361848
Livingston Circuit Court
LC No. 20-030781-CB

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

Plaintiff, Start-All Enterprises, Inc, appeals as of right the trial court order granting summary disposition in favor of defendants Home-Owners Insurance Company and Doty Agency, Inc. For the reasons stated in this opinion, we reverse and remand.

## I. BASIC FACTS

In May 2013, Start-All's tailored property protection policy with Home-Owners was renewed. In July 2013, Start-All acquired a new property. At that time, Start-All's owner, Frank Dumas, e-mailed Doty Agency to inform it of the new property and to request insurance coverage for it. Dumas informed Doty Agency's customer service representative that the property had two buildings, and he requested $500,000 in replacement coverage. Acting on behalf of Start-All, Doty Agency contacted Home-Owners regarding the new property, and Home-Owners issued a change in endorsement. Because a customer service representative for Doty did not inform Home-Owners that there were two buildings on the property, the coverage was only for one building with $500,000 in replacement coverage.

The policy renewed in May 2014. The renewal process was described by Doty's customer service representative. She explained that Home-Owners would create a renewal slip and send it to Doty because Home-Owners did not deal directly with its insureds. Upon receiving the correspondence, Doty would ensure that the coverage was correct and then prepare a letter for the insured describing the current renewal. The customer service representative noted that the letter would not necessarily alert the insured to changes to the policy. Dumas and Start-All's vice-

-1-

president testified that they did not memorize the policy limits for each of the buildings covered by the policy, and so unless they conducted a detailed line-by-line comparison, they would not have known whether the policy limits reflected the coverage that they had initially requested. Rather, they testified that they trusted Doty to verify that Home-Owners did not change the policy.

Following the 2014 policy renewal, Home-Owners conducted an inspection of the property at issue in this case. Its investigator determined that there were two buildings on the property. The investigator prepared a valuation report indicating that the replacement value for both buildings was only $389,559. Upon receiving the valuation report, an underwriter for Home-Owners contacted Doty advising that there were two buildings on the property and asking it to review the valuation report and respond with any desired changes to the requested coverage. According to the underwriter, Home-Owners would not change the policy limits without first receiving express approval from the insurance agency. Likewise, Doty's customer service representative stated that Doty would not instruct Home-Owners to make any changes without approval from its customer. The representative, therefore, e-mailed Dumas to confirm coverage for the subject property. In the e-mail she noted that there was $512,000 replacement coverage (adjusted for inflation) and that there were two buildings. Her notes reflect that Dumas confirmed that there were two buildings on the property.

Dumas met with a Doty insurance agent on July 9, 2014. Dumas believed that they settled on $500,000 in coverage. Changes to the policy were e-mailed to Home-Owners' underwriter on July 16, 2014. Thereafter, Doty's customer service representative confirmed with Dumas that all recommendations in the valuation report had been complied with and she informed the underwriter that the changes had been made. Dumas later asked the customer service representative to provide him with updated prices. And, on August 12, 2014, the underwriter sent a copy of the policy declarations sheet, which reflected $512,000 in replacement coverage for the subject property. Notably, the customer service representative's notes reflect that Dumas wanted coverage for two buildings and a freestanding sign and that he wanted the coverage to remain at $512,000. Similarly, the underwriter's notes state that the coverage on the property should not be reduced. Ultimately, the policy was issued for $512,000 in replacement coverage.[1]

On March 30, 2014, a second underwriter made a note that the policy was being reviewed because the square footage for the building and the building values were "off" in the prior renewal. The second underwriter told Doty's customer service representative that changes needed to be made. As will be discussed further below, there is a factual dispute over who initiated the changes to the policy. Regardless, the underwriter's notes indicate that multiple changes were made to the policy, including an approximately $300,000 reduction in coverage on the subject property. Doty's customer service representative received the renewal with the reduced coverage on April 3, 2015. She forwarded it to the insurance agent handling Start-All's policy. An underwriter

---

[1] After the renewed policy was issued, Dumas e-mailed the customer service representative asking about the cost breakdown as a result of the change in coverage amounts. Dumas believed the e-mail might have been in relation to personal property insurance. Given that there had, as of yet, been no reduction in the amount of coverage on the property at issue in this case, it would be nonsensical to surmise that he was acknowledging a reduction in coverage related to this case.

manager at Home-Owners testified that the only notice of a reduction in coverage provided to Doty was in the form of a newly printed declaration sheet, which stated the new policy limits. Nothing in the notice pointed out to Doty that the policy limits had been reduced. Based upon the correspondence from Home-Owners, the customer service representative was unaware of the reduction in coverage. Indeed, the first time that she learned that the coverage had been reduced was at her deposition in this case.

The renewal with the reduced limits was issued on May 10, 2015. Doty Agency sent an annual renewal letter to Start-All. The letter accurately reflected the new coverage limits, but did not point out that it was a reduction in coverage. Start-All did not ask any questions, request any changes, or refuse to pay the premiums. Subsequently, the policy renewed with the reduced coverage in 2016, 2017, and 2018. Then, on April 23, 2019, a fire caused significant damage to the subject property. After the fire, Dumas learned for the first time that the coverage on the property had been reduced. He stated that he had never requested such a reduction.

In June 2020, Start-All filed a complaint against Home-Owners and Doty. As to Home-Owners, Start-All alleged that it had breached the insurance contract by unilaterally reducing the coverage for the property, by failing to give proper notice of the reduction in coverage, and by declining to honor the original amount of coverage that had been agreed upon. As to Doty, Start-All alleged that the agency had violated its duty to procure the requested coverage because the policy it procured had significantly less coverage than requested. Moreover, Start-All asserted that Doty was liable for failing to advise it that the policy limits had been unilaterally reduced by Home-Owners. Following discovery, Home-Owners and Doty Agency moved for summary disposition, which the trial court granted. This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Start-All argues that the trial court erred by granting summary disposition to Home-Owners and Doty Agency. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Motions brought under MCR 2.116(C)(10) test a complaint's factual sufficiency. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). When reviewing a (C)(10) motion, "a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999) (citation omitted). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). Whether adequate notice was provided by an insurer to comply with the renewal rule generally is a question of law reviewed de novo. *Koski v Allstate Ins Co*, 213 Mich App 166, 170; 539 NW2d 561 (1995), rev'd on other grounds 456 Mich 439 (1998). "[T]he existence of a duty is generally a question of law," which this Court reviews de novo. *Calhoun County v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 20; 824 NW2d 202 (2012).

-3-

B.  ANALYSIS

1.  HOME-OWNERS

Unambiguous provisions in insurance policies must be construed and enforced as written. *Barshaw v Allegheny Performance Plastics, LLC*, 334 Mich App 741, 748; 965 NW2d 729 (2020). Here, under the unambiguous language of the insurance policy in effect at the time of the fire, the policy limit was $218,100, plus an adjustment for inflation.  Start-All, however, contends that the contract should be reformed to reflect coverage limits of $500,000, plus an adjustment for inflation. It contends that reformation is warranted under the "renewal rule" because it was not sufficiently notified that Home-Owners unilaterally reduced the subject property's coverage by approximately $300,000.

It is well-established that an insured, such as Start-All, had an obligation to read its insurance policy "and raise any questions about the coverage within a reasonable time after the policy is issued."  *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 394-395; 729 NW2d 277 (2006).  "Consistent with this obligation, if the insured has not read the policy, he or she is nevertheless charged with knowledge of the terms and conditions of the insurance policy."  *Id*. at 395.  Here, Home-Owners provided Doty with a declarations sheet reflecting that the subject property had $211,000 in coverage.  In turn, Doty conveyed that information and a copy of the declarations sheet to Start-All.  As a result, Home-Owners argues that, applying this rule to the instant case, Start-All is bound by the $211,000 coverage limit stated in the renewed policy.

Start-All, however, argues that the renewal rule should be applied in this case.  The renewal rule is an exception to the general principle that an insured is charged with the knowledge of the terms and conditions of their insurance policy even in cases where they did not satisfy their obligation of reading the policy and raising questions about coverage within a reasonable time. The renewal rule applies "where a policy is renewed without *actual* notice to the insured that the policy has been altered."  *Koski*, 213 Mich App at 170 (quotation and citation marks omitted; emphasis added).  "Where a renewal policy is issued without calling the insured's attention to a reduction in coverage, the insurer is bound to the greater coverage in coverage in the earlier policy."  *Id*.  Thus, "[w]hen the insurer fails to provide notice, the insurer is bound to the greater coverage in the earlier policy, and the insurer is estopped from denying coverage on the basis of the discrepancy between the current policy and the prior one that was not brought to the insured's attention."  *Casey*, 273 Mich App at 395.

Home-Owners asserts that the renewal rule does not apply in this case because it provided a copy of the declarations sheet, which reflected the $211,000 coverage to Doty.  It contends that, by providing the declarations sheet to Doty (Start-All's agent) it satisfied its obligation to provide sufficient notice of the reduction in coverage to Start-All.  In support, Home-Owners relies heavily upon this Court's opinion in *Casey*.  In *Casey*, this Court reasoned:

> The primary issue here is whether the Caseys received notice of the change in their insurance policy's dwelling coverage limit.  The Caseys concede that their insurance agent, James Thurmon, informed them before the fire that their coverage was being reduced.  But they argue that they had no notice of the actual amount of their reduced coverage until after the fire.  Accordingly, they argue that they should

-4-

not be bound by that reduced coverage limit and that they should instead receive 100 percent of the full cost to replace their dwelling. Auto-Owners argues that the Caseys are charged with knowledge of their policy's terms and that it fulfilled its duty to notify the Caseys of the reduced coverage when it notified James Thurmon.

At his deposition, Everett Casey admitted that a year before the fire he received notice from James Thurmon that Auto-Owners had chosen to reduce the Caseys' dwelling coverage. Everett Casey also explained that, although he did not recall receiving one, it was possible that he received a copy of his insurance policy when the Caseys purchased the policy in 1995. He also admitted that he "had the opportunity to become aware" of the policy's terms. . . . In that testimony, in sum, he stated that he had the opportunity, yet failed, to become familiar with his insurance policy and that James Thurmon notified him a year before the fire that there was going to be a reduction in his coverage.

An insured person, when notified that his or her insurance coverage is being reduced, is bound to inquire into the amount of the reduction. But, as Everett Casey admitted, "no dollar amounts were mentioned" in his conversation with Thurmon. Thus, we conclude that the Caseys are not entitled to relief for breach of contract when Everett Casey admittedly failed to read the policy and knowingly abrogated his duty to inquire about the change in his coverage, thereby implicitly accepting the new coverage limits. "It was his business to know what his contract of insurance was . . . ." [*Casey*, 273 Mich App at 395-396 (citation omitted).]

*Casey* is distinguishable from this case. In *Casey*, the plaintiffs were informed by their insurance agent that their coverage would be reduced. *Id*. That information provided them with actual notice that their coverage was being reduced and that they should read their policy to determine what their new coverage limits would be. *Id*. Here, the fact that the coverage was reduced was only reflected in the declarations sheet. No one from Home-Owners advised Start-All's agent, Doty, that the coverage was being reduced, nor did they point out that the coverage, in fact, had been reduced. Based upon the correspondence from Home-Owners, Doty's customer service representative did not realize that the coverage had been reduced. She did not flag for the insurance agent that the coverage had been reduced. The renewal letter prepared by the insurance agent likewise did not point out that the coverage was reduced.

Thus, unlike the plaintiffs in *Casey*, who were expressly told that their coverage was being reduced, no such information was conveyed to either Start-All or to Doty as Start-All's agent. Start-All, therefore, did not receive actual notice of the reduction in coverage such that they even knew to compare their policy limits from the current year to the prior year. Rather, the only notice that they received was the constructive notice of the policy's terms and conditions that was imputed

upon them by their obligation to read their policy.[2]  Again, however, the renewal rule requires that the insured receive *actual* notice that their policy had been altered.  *Koski*, 213 Mich App at 170.

Additional caselaw addressing the renewal rule also provides that the insured must provide some actual indication that there will be a reduction in coverage.  In *Industro Motive Corp v Morris Agency, Inc*, 76 Mich App 390, 396; 256 NW2d 607 (1977), this Court opined the renewal rule applied when "the renewal contract is issued without calling to the insured's attention to a reduction in policy coverage."  (Quotation marks and citation omitted.)  In *Marlo Beauty Supply, Inc v Farmers Ins Group of Cos*, 227 Mich App 309, 324; 575 NW2d 324 (1998), this Court held that an insurer "was estopped from denying coverage on the basis of a discrepancy between the current policy and the prior one that was not *pointed out* to the plaintiffs."  (Emphasis added.)  In *Koski*, 213 Mich App at 171-172, this Court held that notice—consisting "of a single emphasized reference in a twelve-page booklet"—was insufficient to call the change to the insured's attention.

On the basis of the above cases, the renewal rule plainly requires the insurer to provide notice that actually draws the insured's attention to the reduction in coverage.  The listing of the new policy limit in the policy declarations each year was insufficient because it did not "point[] out" the change to Start-All.  See *Marlo Beauty Supply*, 227 Mich App at 324.  Further, although actual notice of a reduction in coverage provided to Doty would have been sufficient to constitute actual notice to Start-All, Doty's principal, the record does not reflect that actual notice of a reduction in coverage was provided to Doty.

The renewal rule exists because an insured has "a right to rely upon the assumption that his policy would be in accordance with the terms" of the original agreement.  *Industro Motive Corp*, 76 Mich App at 395 (quotation marks and citation omitted).  If an insurance company "desired to make it anything different, it should, in order to make it binding upon [the insured], under the authorities in this State, have called his attention to those clauses which differed" from the original agreement.  *Id*. (quotation marks and citation omitted).  Indeed, if merely providing the insured a copy of the policy—and declarations sheet—reflecting the reduced coverage was sufficient to constitute actual notice, the renewal rule would cease to exist.  Accordingly, we conclude that Home-Owners could not satisfy its obligation to provide notice of the reduction in coverage merely by providing Start-All (through its agent) the means to actually identify the reduction in coverage.

---

[2] Our Supreme Court has explained constructive notice as follows:

> A person is chargeable with constructive notice where, having the means of knowledge, he does not use them.  If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquires, he must be taken to have notice of those fact, which, if he had used such ordinary diligence, he would readily have ascertained.  [*Hill v Sears, Roebuck & Co*, 492 Mich 651, 668; 822 NW2d 190 (2012) (quotation marks and citations omitted).]

On appeal, Home-Owners asserts that Start-All, like the plaintiffs in *Casey*, was expecting a reduction in coverage. In support, Home-Owners directs this Court to an October 2014 e-mail from Start-All to Doty's customer service representative asking about updated premiums. The policy that issued after that e-mail, however, had the requested $512,000 coverage limit. The reduction in coverage did not occur until May 2015. Thus, the 2014 e-mail cannot constitute notice of a change to the policy that Home-Owners had not yet made. Moreover, Home-Owners' argument ignores the array of changes Start-All actually requested in 2014, including the addition of the pole barn and a freestanding sign to the property.

Lastly, Home-Owners insists the renewal rule cannot apply in the present case because the fire occurred nearly four years after the coverage was reduced. However, a two-year delay between the reduction in coverage and fire in *Koski* did not prevent the application of the renewal rule. See *Koski*, 213 Mich App at 168. Home-Owners proffers no explanation for why a four-year gap between the reduction in coverage and the fire in this case should result in a different outcome.

Given that notice of the reduction in coverage was insufficient, we next consider whether Start-All is entitled to summary disposition on its claims against Home-Owners. We conclude that it is not. For the renewal rule to apply, the insurer must have altered the coverage unilaterally. See *Casey*, 273 Mich App at 395-396. That is, if the change was requested by the insured or the insured's agent, then the insured would not be entitled to rely upon the renewal rule given that the insured would have knowledge of the requested reduction in coverage. Here, there is a question of fact regarding who initiated the changes to the policy limits. Doty's customer service representative testified that she believed the changes were initiated solely by Home-Owners' underwriter. She added that Home-Owners would make unilateral changes if, at renewal, there was a difference between an inspection report and the policy terms. In contrast, the underwriter testified that they would never initiate changes without authorization from the insured's insurance agent. She posited that a request made over the telephone may not have been documented. An underwriter manager testified that changing a policy without the approval of the insured's insurance agent would be a violation of policy. Notably, neither the customer service representative nor Home-owners' underwriter recalled the details of their March 30, 2015 telephone conversation. We conclude that, on this record, reasonable minds could differ regarding who requested the policy changes, such that summary disposition in favor of either Start-All or Home-Owners is unwarranted. See *Auto-Owners Ins Co*, 322 Mich App at 224. We therefore reverse the portion of the trial court's opinion and order awarding summary disposition to Home-Owners and remand for further proceedings consistent with this opinion.

## 2. DOTY AGENCY

"Michigan law recognizes a cause of action in tort for an insurance agent's failure to procure requested insurance coverage . . . ." *Holton v A+ Ins Assocs, Inc*, 255 Mich App 318, 324; 661 NW2d 248 (2003). The requirement of an insurance agent to procure the appropriate coverage includes the correlating duty to advise the insured. *Id*. "Where the duty to advise has been breached, the insurance agent is liable for any damages resulting from the breach." *Id*. at 325. "It has long been the common law of this state that, when an insurance policy is facilitated by an independent insurance agent or broker, the independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer." *Al-Hajjaj v Hartford Accident &*

*Indemnity Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359291); slip op at 4 (quotation marks, citation, and alterations omitted). There is no dispute in the present case that Doty is an independent insurance agency. In the simplest terms, "[a]n insurance agent owes a duty to procure the insurance coverage requested by an insured." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 37; 761 NW2d 151 (2008). "The insured's agent must strictly follow the insured's instructions which are clear, explicit, absolute, and unqualified." *Id*. at 38 (quotation marks and citation omitted).

Here, Doty was an independent insurance agent, which regularly did business with Start-All. As a result, it owed Start-All a duty to procure the coverage requested by Start-All. See *id*. at 37-38. Doty does not dispute that it owed a duty to procure the requested coverage. Rather, it argues that it did not breach that duty by failing to provide Start-All with another notice of the change of coverage for the subject property. Doty insists that the notices it provided to Start-All were sufficient to make it aware of the reduction in coverage on the subject property. As a result, Doty believes it was relieved of any duty to provide additional notices. However, as discussed in greater depth above, the notices Doty provided to Start-All were insufficient under relevant caselaw discussing the renewal rule. Thus, Doty's reliance on the renewal rule to evade its duty to procure the coverage requested is misplaced.

Alternatively, Doty argues that it did not have a duty to make sure that Start-All obtained and maintained adequate coverage from Home-Owners at all times. However, Start-All only argues Doty had the duty to procure and maintain coverage of the subject property with a limit of at least $500,000. See *Zaremba Equip, Inc*, 280 Mich App at 37-38. The reason Doty had a duty to do so, Start-All contends, is because it had told Doty to procure the coverage in that amount. See *id*. The record supports this conclusion because Doty's customer service representative wrote "OK" next to the $512,000 coverage for the subject property after the inspection occurred. The only reason provided by any litigants as for why the policy limit for the subject property might have been reduced was as a result of the inspection, which suggested the subject property was over-insured. Yet, even after the inspection was completed and Start-All's owner met with a Doty insurance agent, Start-All still reiterated its desire to have over $500,000 in coverage for the subject property. The parties do not dispute that the record is devoid of any request from Start-All to reduce the coverage. There is at least a question of fact regarding whether Doty procured the coverage Start-All explicitly requested. *Id*. Consequently, the factual and legal bases for Doty's arguments related to duty lack merit.

Next, Doty argues, even if it had a duty, there was no genuine issue of material fact regarding causation. Start-All's claim against Doty is for negligence. See *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 234; 859 NW2d 723 (2014). To prevail on a negligence claim, the plaintiff must prove: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 243; 964 NW2d 50 (2020) (quotation marks and citation omitted).

Doty argues that Start-All cannot prove "proximate, or legal, cause." Resolution of this issue "requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim." *Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017). "Proximate

cause . . . normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Powell-Murphy*, 333 Mich App at 246. In *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 157-158; 871 NW2d 530 (2015), this Court stated:

> the chain of causation between the defendant's conduct and the plaintiff's injuries may be broken by an intervening or a superseding cause. An "intervening cause" is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed. An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was reasonably foreseeable. Thus, the issue of proximate causation requires focusing on whether the result of conduct that created a risk of harm and any intervening causes were foreseeable. [Quotation marks and citation omitted.]

Doty asserts that Start-All's negligence in not reading and understanding the insurance policy was an intervening and superseding cause of its injuries. Even overlooking the fact Start-All's alleged failure to read and understand the policy was not a form of negligence that "actively operates in producing harm," the argument fails because Start-All's failure was reasonably foreseeable. *Id*. Doty's alleged negligence was failing to procure the policy Start-All requested during the 2015 renewal and during subsequent years. To prevail, Doty must show that it was unforeseeable Start-All would not read and discover Doty's error and then ask Doty to fix it. However, it is reasonably foreseeable that a business owner would not scour policy renewals to ensure they had the same coverages as the preceding year. Indeed, the bulk of the litigation in the present case focused on the renewal rule, which is founded upon the idea that an insured is unlikely to closely read insurance documents unless their attention is specifically directed to a change. Consequently, Doty's claim of Start-All's purported negligence being an intervening and superseding cause of the harm fails.

In addition, "[i]t is not uncommon that more than one proximate cause contributes to an injury." *Ray*, 501 Mich at 65. In an ordinary negligence claim, like the present one, a plaintiff only has to prove that the alleged negligence was *a* proximate cause of the injuries suffered. *Powell-Murphy*, 333 Mich App at 243. A plaintiff's "admitted failure to read the policy could qualify as comparative negligence," which generally is a jury question. *Zaremba Equip, Inc*, 280 Mich App at 33. Thus, there was a genuine issue of material fact related to causation, and while Start-All may have been negligent in not more closely reading and processing its insurance policies, a jury would be required to apportion fault between the parties. *Id*.

Alternatively, Doty argues it was entitled to summary disposition if Home-Owners is liable under the renewal rule. As addressed above, however, there remains a question of fact regarding application of the renewal rule, so summary disposition in Start-All's favor is not warranted.

Lastly, Doty contends that it should not be held liable for procuring the wrong policy when Start-All ratified the decision. We conclude it was waived by Doty's failure to raise it in the trial court. In *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ____; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 4-5, this Court held a failure to raise an

argument in the trial court during general civil litigation results in the waiver of that argument. Because the issue was not raised in the trial court, we consider it waived and do not consider it.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett