MARLO BEAUTY SUPPLY, INC v FARMERS INSURANCE GROUP OF
COMPANIES

Docket No. 175470. Submitted May 14, 1996, at Detroit. Decided January
13, 1998, at 9:10 A.M.

Marlo Beauty Supply, Inc., and Allied Barber and Beauty Supply, Inc.,
brought an action in the Wayne Circuit Court against Farmers
Insurance Group of Companies, Truck Insurance Exchange, and
William D. Abraham (hereafter defendants), and nominal defend-
ants Jacqueline Smith, Denelda Shaw, and Linda Smith, seeking a
declaration that the defendant liability insurers were obligated to
defend the plaintiffs in actions brought against the plaintiffs by the
nominal defendants seeking damages for injuries received when
acetone purchased from the plaintiffs ignited. The plaintiffs also
alleged that Abraham, an agent for Farmers, negligently failed to
provide the plaintiffs with adequate insurance coverage. The
defendants had refused to defend the plaintiffs in the underlying
actions on the basis of two policy endorsements that restricted
products liability coverage and an exclusion contained in the pol-
icy. The court, James R. Chylinski, J., found that the defendants
had failed to create a question of fact concerning the authenticity
of the signatures of the plaintiffs' president on the two policy
restriction endorsements, which the plaintiffs claimed were forger-
ies, and granted the plaintiffs partial summary disposition with
regard to that issue. The court also found that the exclusion in the
policy was not applicable because the acetone was not manufac-
tured by the plaintiffs. Following a bench trial, the court found that
the plaintiffs could not have reasonably expected coverage and
denied declaratory relief. The court also found no special relation-
ship between the plaintiffs and Abraham and denied the negligence
claim. The plaintiffs appealed and the defendants cross appealed.

The Court of Appeals *held*:

1. The court did not err in finding that a special relationship did
not exist and therefore Abraham did not owe a duty to the plain-
tiffs. The negligence claim was properly denied.

2. The court erred in making a finding of fact regarding the rea-
sonable expectations of the plaintiffs. The construction of a con-
tract with clear language is a question of law. The general policy

language would have led the plaintiffs reasonably to expect that the defendants were obligated to defend them against the suits brought by the underlying plaintiffs. Therefore, unless other policy language excluded coverage, the court erred in finding that the plaintiffs did not have a reasonable expectation of coverage.

3. Although the court erred in finding that the policy exclusion did not apply on the basis that the products that caused the alleged injury were not prepared or developed by the plaintiffs, the court reached the correct result in finding that the exclusion did not apply. The exclusion generally applied to products sold or distributed by the plaintiffs. However, the exclusion did not apply to the underlying plaintiffs' allegations that the plaintiffs failed to provide adequate warnings of a dangerous product because the exclusion does not unambiguously encompass an allegedly negligent failure to warn.

4. The court erred in granting the plaintiffs summary disposition with regard to the issue of the applicability of the two policy restriction endorsements. The court erred in relying on an unsworn letter by an alleged handwriting expert to resolve the disputed question of fact regarding the authenticity of the signatures on the endorsements. The matter must be remanded. If, on remand, the factfinder finds that the plaintiffs' president did sign the two policy restriction endorsements, the language of the endorsements would require a finding that the plaintiffs could not have reasonably expected coverage.

5. The court did not clearly err in finding that the elements of estoppel were not satisfied with regard to the plaintiffs' claim that the defendants led them to believe that they would provide products liability coverage.

Affirmed in part, reversed in part, and remanded.

1. INSURANCE — AGENT'S DUTY TO ADVISE INSURED.

An insurance agent generally does not have an affirmative duty to advise a client regarding the adequacy of the coverage of a policy; such a duty may arise, however, where a special relationship exists between the insurance company or its agent and the policyholder.

2. INSURANCE — JUDICIAL CONSTRUCTION — RULE OF REASONABLE EXPECTATIONS.

A court finds coverage under an insurance policy under the rule of reasonable expectations where the policyholder, upon reading the policy language, is led to a reasonable expectation of coverage; the court must look at the policy language from an objective standpoint in considering the insured's reasonable expectations; judicial construction of an insurance policy with clear language is a question of law.

3. INSURANCE — EXPECTATIONS OF COVERAGE.

> A meeting of the minds with regard to expectations of the coverage provided by an insurance policy is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.

4. INSURANCE — EXEMPTIONS FROM COVERAGE.

> An insurer may define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy; exemptions that preclude coverage for the general risk are strictly construed against the insurer but, where clear and specific, must be given effect.

5. INSURANCE — JUDICIAL CONSTRUCTION.

> Ambiguities in insurance contracts are strictly construed against the insurer to maximize coverage.

6. MOTIONS AND ORDERS — SUMMARY DISPOSITION.

> Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in a motion for summary disposition pursuant to MCR 2.116(C)(10) must be filed with the motion; the affidavits must be made on the basis of personal knowledge and set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds stated in the motion; opinions, conclusionary denials, unsworn averments, and inadmissible hearsay do not satisfy the court rule; disputed fact, or the lack of it, must be established by admissible evidence (MCR 2.116[G][3]).

7. INSURANCE — INSURED'S KNOWLEDGE OF TERMS AND CONDITIONS.

> An insured is obligated to read the insured's insurance policy and raise questions concerning coverage within a reasonable time after the issuance of the policy and is held to knowledge of the terms and conditions contained within the policy, even though the insured may not have read the policy.

*Strobl and Manoogian, P.C.* (by *Kieran F. Cunningham, Keith S. King,* and *Thomas J. Strobl*), for the plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin* and *Robert D. Goldstein*), for Farmers Insurance Group of Companies, Truck Insurance Exchange, and William D. Abraham.

Before: Wahls, P.J., and Young and H. A. Beach\*, JJ.

Per Curiam. Plaintiffs appeal as of right the April 20, 1994, order of declaratory judgment in favor of Farmers Insurance Group of Companies, Truck Insurance Exchange, and William D. Abraham (hereafter defendants). Defendants cross appeal, arguing that their motion for summary disposition was erroneously denied. We affirm in part, reverse in part, and remand for further proceedings.

I

In 1989, defendant William D. Abraham, an agent for defendant Farmers Insurance Group, sold plaintiffs a liability insurance policy. In 1991 and 1992, the nominal defendants in this action, Jacqueline Smith, Denalda Shaw, and Linda Smith, brought actions against plaintiffs, alleging that they were injured when acetone that they had purchased from plaintiffs ignited. Defendants refused to defend or indemnify plaintiffs in these suits because of two policy endorsements that restricted products liability coverage, ET-114[1] (products liability exclusion) and ET-

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

[1] This exclusion read:

It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage for the operations described in this endorsement does not apply to bodily injury or property damage arising out of

(1) the named insured's products, or

(2) reliance upon a representation or warranty made with respect thereto;

if the bodily injury or property damage occurs after physical possession of such products has been relinquished to others whether such bodily injury or property damage occurs on premises owned by or rented to the named insured or elsewhere.

343[2] (products and completed operations liability exclusion). In addition, defendants claimed that coverage was precluded by an exclusion listed in § IV(4)(b) of the insurance policy. Plaintiffs brought this action seeking a declaratory judgment that defendants were obligated to defend plaintiffs. In addition, plaintiffs brought a negligence claim against Abraham, alleging that Abraham had negligently failed to provide plaintiffs with adequate insurance coverage.

Plaintiffs moved for summary disposition pursuant to MCR 2.116(C)(10). They claimed that there was no genuine issue of material fact that the signatures of plaintiffs' president, Michael Asher, on the two policy restriction endorsements were forgeries. In addition, they claimed that the exclusion in § IV(4)(b) of the insurance policy was not applicable. Finally, they argued that defendants should be estopped from denying coverage because plaintiffs reasonably believed that they had purchased products liability coverage. Defendants filed a cross-motion for summary disposition.

---

[2] This restriction read:

> In consideration of the reduced premium, it is agreed that this policy affords no coverage for Bodily Injury or Property Damage arising out of any matter encompassed within the definitions of "Products Hazards" or "Completed Operations Hazards" including but not limited to causes of action based upon:
>
> 1. Breach of any express or implied warranty;
>
> 2. Defects or negligence in design, inspection, testing, or manufacture;
>
> 3. Failure to warn;
>
> 4. Failure to properly instruct in the use of a product; or
>
> 5. Any other alleged defects, negligence, or failure of whatsoever kind or nature in relation to a product or completed operation.

The trial court held that defendants had failed to create a question of fact concerning the authenticity of the signatures on the two policy restriction endorsements and granted plaintiffs partial summary disposition with regard to that issue. The trial court also found that the exclusion in § IV(4)(b) was not applicable because the acetone that allegedly injured the underlying plaintiffs was not manufactured by plaintiffs. Instead of granting plaintiffs' motion for summary disposition in full or defendants' cross-motion for summary disposition, the trial court ordered a trial to determine whether plaintiffs reasonably expected coverage under the policy. Following a bench trial, the trial court found that plaintiffs could not have reasonably expected coverage and denied declaratory relief. In addition, because the trial court found no special relationship between plaintiffs and Abraham, it denied plaintiffs' negligence claim.

II

Plaintiffs argue on appeal that the trial court clearly erred in finding that Abraham was not negligent. We disagree. Generally, an insurance agent does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage. *Bruner v League General Ins Co*, 164 Mich App 28, 31; 416 NW2d 318 (1987). However, a duty to advise may arise when a "special relationship" exists between the insurance company or its agent and the policyholder. *Id.*, p 32. After reviewing the record, we believe that the trial court's finding that no special relationship existed between Asher and Abraham was not clearly erroneous. *Arco Industries Corp v American Motorists Ins Co*, 448 Mich 395, 410; 531 NW2d 168 (1995); com-

pare *Stein v Continental Casualty Co*, 110 Mich App 410, 417-418; 313 NW2d 299 (1981). Accordingly, Abraham did not owe a duty to plaintiffs. *Bruner*, *supra*, p 34. The trial court did not err in denying plaintiffs' negligence claim.

III

Plaintiffs also argue that defendants were required to plead contributory negligence as an affirmative defense to the negligence claim. Because of our holding regarding the previous issue, this issue is moot.

IV

Plaintiffs argue that the trial court clearly erred in finding that plaintiffs did not have a reasonable expectation of coverage. We agree.

The duty to defend is essentially tied to the availability of coverage. *Arco Industries Corp v American Motorists Ins Co (On Remand)*, 215 Mich App 633, 636; 546 NW2d 709 (1996). The duty to defend arises in instances in which coverage is even arguable, though the claim may be groundless or frivolous. *Id.* Consistent with this premise, any analysis of an insurer's duty to defend must begin with an examination of whether coverage is possible. *Id.* If coverage is not possible, then the insurer is not obliged to offer a defense. *Id.*

An insurance policy is much the same as any other contract; it is an agreement between the parties. *Zurich-American Ins Co v Amerisure Ins Co*, 215 Mich App 526, 530; 547 NW2d 52 (1996). An insurance policy must be enforced in accordance with its terms. *Arco, supra*, 448 Mich 402. An insurance contract should be read as a whole to effectuate the

overall intent of the parties. *Pacific Employers Ins Co v Michigan Mut Ins Co*, 452 Mich 218, 224; 549 NW2d 872 (1996).

Under the rule of reasonable expectations, a court finds coverage under a policy if "the policyholder, upon reading the contract language, is led to a reasonable expectation of coverage." *Fire Ins Exchange v Diehl*, 450 Mich 678, 687; 545 NW2d 602 (1996). In considering the reasonable expectations of the insured, a court must look at the policy language from an objective standpoint and determine whether an insured could have reasonably expected coverage. *Allstate Ins Co v Keillor (After Remand)*, 450 Mich 412, 417; 537 NW2d 589 (1995).

First, we note that the trial court erred in making a finding of fact regarding the reasonable expectations of plaintiffs. The construction of a contract with clear language is a question of law. *Auto Club Ins Ass'n v Lozanis*, 215 Mich App 415, 418-419; 546 NW2d 648 (1996).

Here, under the clear terms of the insurance policy, defendants agreed:

> To pay all damages which the insured becomes legally obligated to pay because of
>
> (C) bodily injury to any person, and
>
> *     *     *
>
> (E) damage to property, except that arising out of the ownership, maintenance or use of any automobile
>
> to which this insurance applies, caused by an occurrence. [Section II, 1.]

In addition, the policy provided that defendants "shall have the right and duty to defend any suit against the

insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent." *Id.*

Temporarily ignoring the policy's exclusions, this general policy language would have led plaintiffs reasonably to expect that defendants were obligated to defend them against the suits brought by the underlying plaintiffs. Although the trial court found that there was no meeting of the minds regarding products liability coverage, there is no dispute that there was a meeting of minds that defendants would provide to plaintiffs the insurance coverage quoted above. A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind. *Kamalnath v Mercy Memorial Hosp Corp*, 194 Mich App 543, 548; 487 NW2d 499 (1992). Thus, unless other policy language excluded coverage, the trial court erred in finding that plaintiffs did not have a reasonable expectation of coverage.

v

Defendants argue on cross appeal that the trial court erred in determining that the exclusion listed in § IV(4)(b) of the insurance policy did not apply. We disagree with the trial court's reasoning, but agree with the result.

An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy. *Zurich-American, supra,* p 531. Appellate courts strictly construe against an insurer exemptions that preclude coverage for the

general risk. However, courts cannot create ambiguity where none exists. *Pacific Employers, supra,* p 224; *Diehl, supra,* p 687. Clear and specific exclusions must be given effect. *Pacific Employers, supra,* p 224.

Here, the trial court held that the exclusion at issue did not apply because the products that allegedly injured the underlying plaintiffs were not prepared or developed by plaintiffs. This provision excluded coverage for

> bodily injury or property damage resulting from a failure of *the named insured's products* or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work. [Section IV(4)(b) (emphasis supplied).]

The policy further defined "named insured's products" as:

> [G]oods or products manufactured, *sold, handled or distributed* by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold. [Section V(K) (emphasis supplied).]

In the underlying complaints, the underlying plaintiffs alleged that they purchased a dangerous product at Marlo Beauty Supply, Inc. Because the insurance policy's definition of "named insured's product" was explicitly defined to include products that were "sold"

or "distributed" by the insured, construction of the policy language fairly leads to only one reasonable interpretation. *Zurich-American, supra,* p 531. Accordingly, we hold that the exclusion in § IV(4)(b) generally applied to products sold or distributed by plaintiffs. *Kyllo v Northland Chemical Co,* 209 NW2d 629, 633 (ND, 1973). The trial court's conclusion to the contrary was in error.

Despite the trial court's error, it was correct in holding that the exclusion did not apply. We will not reverse a trial court's judgment that reaches the correct result for the wrong reason. *Welch v Dist Court,* 215 Mich App 253, 256; 545 NW2d 15 (1996). Unlike most contractual relationships where the parties negotiate contract terms, the terms of liability insurance contracts are standardized and are drafted by the insurance industry. *American Bumper & Mfg Co v Hartford Fire Ins Co,* 452 Mich 440, 448; 550 NW2d 475 (1996). Policyholders have little or no bargaining power to change terms. *Id.* Consequently, in construing insurance contracts, any ambiguities are strictly construed against the insurer to maximize coverage. *Id.; Pacific Employers, supra,* p 224.

Here, the underlying plaintiffs alleged that plaintiffs failed to provide adequate warnings of a dangerous product. The exclusion found in § IV(4)(b) does not explicitly disallow coverage for damages resulting from a failure to warn. The wording of this exclusion has caused confusion and ambiguity. *W T Grant Co v U S F & G Ins Co,* 279 Pa Super 591, 596-597; 421 A2d 357 (1980). This is not a case where the underlying plaintiff alleged that a product actively malfunctioned. See *id.* Similarly, this is not a case where a product failed to perform its function. Compare *Pittway Corp*

*v American Motorists Ins Co*, 56 Ill App 3d 338, 344-345; 370 NE2d 1271 (1977); *Kyllo, supra,* pp 632-633. To the contrary, the evidence showed that it was known that acetone was extremely flammable and that its vapors could ignite. Strictly construing the exclusion's ambiguity against defendants, we hold that the exclusion in § IV(4)(b) does not unambiguously encompass an allegedly negligent failure to warn. *Scarborough v Northern Assurance Co*, 718 F2d 130, 136 (CA 5, 1983). Accordingly, the trial court reached the correct conclusion when it determined that the exclusion listed in § IV(4)(b) of the insurance policy did not apply.

VI

Defendants also argue on cross appeal that the trial court erred in granting plaintiffs summary disposition with regard to the issue of the applicability of the two policy restriction endorsements. We agree.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Lash v Allstate Ins Co*, 210 Mich App 98, 101; 532 NW2d 869 (1995). In reviewing a trial court's decision with regard to a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court examines all relevant affidavits, depositions, admissions, and other documentary evidence and construes the evidence in favor of the nonmoving party. *Sanchez v Lagoudakis (On Remand)*, 217 Mich App 535, 539; 552 NW2d 472 (1996). The Court then determines whether a genuine issue of material fact exists on which reasonable minds could differ. *Id.* This Court is liberal in finding a genuine issue of material fact. *Lash, supra,* p 101. We review de novo a trial

court's grant or denial of a motion for summary disposition. *Sanchez, supra,* p 539.

Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in a motion for summary disposition pursuant to MCR 2.116(C)(10) must be filed with the motion. MCR 2.116(G)(3); *SSC Associates v General Retirement System of Detroit,* 192 Mich App 360, 363-364; 480 NW2d 275 (1991). The affidavits must be made on the basis of personal knowledge and must set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds stated in the motion. *Id.,* 364. Opinions, conclusionary denials, unsworn averments, and inadmissible hearsay do not satisfy the court rule; disputed fact, or the lack of it, must be established by admissible evidence. *Id.* The party opposing a motion for summary disposition has no obligation to submit any affidavit until the moving party submits a proper affidavit regarding a dispositive fact. *Id.*

Here, in partially granting plaintiffs' motion for summary disposition, the trial court relied on an unsworn opinion letter by an alleged handwriting expert who wrote that the signatures on the two policy restriction endorsements were not signed by Asher or other people authorized to sign on Asher's behalf. The trial court erred in relying on this unsworn letter to resolve a disputed question of fact. *Id.,* p 367. Accordingly, defendants were under no obligation to submit affidavits in response to plaintiffs' defective motion. *Id.,* p 364.

In any case, a party opposing a motion brought under MCR 2.116(C)(10) may not rest upon the mere allegations or denials in that party's pleadings, but

must by affidavit, deposition, admission, or other documentary evidence set forth specific facts showing that there is a genuine issue for trial. *Lash, supra,* p 101. Here, in opposition to plaintiffs' motion, defendants submitted an affidavit by Abraham in which he swore that he sent unsigned copies of the endorsements to Asher with instructions that the endorsements be signed and returned to the office of Farmers Insurance. Abraham stated that the documents were returned signed by Mr. Michael Asher. Defendants argued further that Asher admitted in his deposition that several documents that bore Asher's name were not actually signed by him. Similarly, although several other documents filed with the state of Michigan purported to have Asher's signature, Asher could not identify those documents as containing his personal signature.

To render an instrument in writing competent evidence, it is necessary that some proof should be given from which the jury can legally infer that it was executed by the party. *Robertson v Burstein,* 105 NJL 375; 146 A 355 (1929); see 32 CJS, Evidence, § 625, p 793 (1964) ("[I]f there is a reasonable probability established that the document is what it purports to be, the question then becomes one for the jury, and the document should go before them, with the evidence impeaching its genuineness, and with proper instructions."); anno: *Necessity and manner of authenticating paper purporting to be act of private corporation,* 65 ALR 329, § II(b)(3), p 344 ("[W]here the execution of the paper is the fact directly in issue, the jury, and not the court, is to judge of the proof . . . . [W]herever there is a spark of evidence of sealing and delivering, the court[s] are bound to permit

the instrument to be read; for it is not for them, but the jury, to judge of the fact."). The weight to be given testimony of a handwriting expert is for the trier of fact. *In re Skoog Estate*, 373 Mich 27, 29; 127 NW2d 888 (1964). Construing the evidence in favor of defendants, and being liberal in finding a genuine issue of material fact, reasonable minds could differ regarding whether the two policy restriction endorsements were signed by or at the direction of Asher. Accordingly, the trial court erred in granting partial summary disposition to plaintiffs. *Sanchez, supra*, p 539; *Degen v Oliveto*, 80 Mich App 573, 579; 264 NW2d 64 (1978).

The applicability of the two policy restriction endorsements is material to the disposition of this case. As already mentioned, the general terms of the policy would have led plaintiffs to reasonably expect that they had products liability coverage. However, if the factfinder on remand finds that Asher did sign the two policy restriction endorsements, then looking at the language of the endorsements from an objective standpoint, *Keillor, supra*, p 417, plaintiffs could not have reasonably expected coverage.

VII

Plaintiffs argue that even if the terms of the insurance policy excluded products liability coverage, the case falls under an exception to the general rule requiring an insured to raise questions concerning coverage because they were led to believe that defendants would provide the same coverage as plaintiffs carried with their prior insurance company. We disagree.

An insured is held to knowledge of the terms and conditions contained within an insurance policy, even though he may not have read the policy. *Farm Bureau Mut Ins Co v Hoag*, 136 Mich App 326, 332; 356 NW2d 630 (1984). An insured is obligated to read his insurance policy and raise questions concerning coverage within a reasonable time after the issuance of the policy. *Koski v Allstate Ins Co*, 213 Mich App 166, 170; 539 NW2d 561 (1995); *Parmet Homes, Inc v Republic Ins Co*, 111 Mich App 140, 145; 314 NW2d 453 (1981). However, in *Industro Motive Corp v Morris Agency, Inc*, 76 Mich App 390; 256 NW2d 607 (1977), the plaintiffs asked the defendant insurance company to provide coverage identical to that which they previously held with their prior insurance company. This Court held that the defendant was estopped from denying coverage on the basis of a discrepancy between the current policy and the prior one that was not pointed out to the plaintiffs. *Id.*, p 395; see also *Pinckney Community Schools v Continental Casualty Co*, 213 Mich App 521, 535-536; 540 NW2d 748 (1995).

In *Industro, supra*, p 395, this Court noted as an element of estoppel that the agent of the defendant promised the plaintiffs that the defendant could provide coverage identical to the plaintiffs' existing insurance but at a lower rate. *Id.*; see, generally, *Schmidt v Bretzlaff*, 208 Mich App 376, 378-379; 528 NW2d 760 (1995). Here, in contrast, this element of a promise has not been satisfied. It is true that Asher testified that he told Abraham that he wanted the same policy as before and that he and Abraham never discussed products liability. However, Abraham testified that he used a checklist to make sure that every issue of

importance was discussed, including the issue of products liability coverage. Abraham also testified that when he recommended products liability coverage, Asher stated that plaintiffs would be covered by their manufacturers' insurance in a products liability situation. In addition, in May 1991, Asher asked Abraham for a quote for products liability coverage, a fact that reasonably suggests that Asher knew he did not have products liability coverage.

In making its findings of fact, the trial court found that although Asher may have expected products liability coverage, defendant Farmers Insurance did not. The court also noted several differences between plaintiffs' prior policy and the policy here. Such findings imply that the court found that the element of a promise in estoppel was not satisfied. Findings of fact by the trial court may not be set aside unless clearly erroneous. MCR 2.613(C); *Arco, supra,* 448 Mich 410. Appellate courts should give special deference to the trial court's findings when they are based upon its assessment of the witnesses' credibility. *Id.* Reversal is permitted only if the appellate court is left with a definite and firm conviction that a mistake has been committed by the lower court. *Id.* Here, the trial court did not clearly err in finding that the elements of estoppel were not satisfied. See *Transamerica Ins Corp v Buckley,* 169 Mich App 540, 547-548; 426 NW2d 696 (1988); *Lee v Evergreen Regency Cooperative,* 151 Mich App 281, 287-288; 390 NW2d 183 (1986).

The trial court's denial of plaintiffs' negligence claim is affirmed. The trial court's judgment denying plaintiffs' request for declaratory relief is reversed.

Remanded for proceedings consistent with this opinion. We do not retain jurisdiction.