*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0126p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

MINGES CREEK, L.L.C.,

*Plaintiff-Appellee,*

*v.*

No. 05-1313

ROYAL INSURANCE COMPANY OF AMERICA,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-72763—Julian A. Cook, Jr., District Judge.

Argued: March 16, 2006

Decided and Filed: April 6, 2006

Before: DAUGHTREY and GILMAN, Circuit Judges; RUSSELL, District Judge.[*]

---

**COUNSEL**

**ARGUED:** James N. McNally, SOMMERS SCHWARTZ, Southfield, Michigan, for Appellant. Rick J. Patterson, POTTER, DeAGOSTINO, O'DEA & PATTERSON, Auburn Hills, Michigan, for Appellee. **ON BRIEF:** James N. McNally, Leonard B. Schwartz, SOMMERS SCHWARTZ, Southfield, Michigan, for Appellant. Rick J. Patterson, Steven M. Potter, POTTER, DeAGOSTINO, O'DEA & PATTERSON, Auburn Hills, Michigan, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. A customer slipped and fell on an icy sidewalk upon exiting a card store in the Minges Brook Mall, a shopping center owned by Minges Creek, L.L.C. Chubb Insurance Company, the insurer of the mall's common areas, paid the settlement cost and the associated litigation expenses resulting from the customer's lawsuit. Minges Creek then sued Royal Insurance Company of America, the insurer of the card store, for indemnification on the basis that Minges Creek was named as an additional insured under the card store's liability policy with Royal. Summary judgment was granted in favor of Minges Creek. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case with instructions for the district court to dismiss the complaint with prejudice.

---

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

## I. BACKGROUND

Minges Creek is the owner of the Minges Brook Mall located in Battle Creek, Michigan. In December of 1989, Minges Creek leased a portion of its property to the "1/2 Off Card Shop" (Card Shop). The "leased premises" were defined in the lease as the 6,796 square feet shown on the site plan, which clearly indicated that the leased premises were limited to the interior of the store and did not include the exterior walls, the roof, or the surrounding land. (Lease § 1.01) Common areas, including the parking lots, roadways, and pedestrian sidewalks, were provided by Minges Creek "for the convenience and use of the tenants of the Shopping Center, and their respective subtenants, agents, employees, customers, invitees, and any other licensees of Landlord." (Lease § 7.03)

The lease also set forth the Card Shop's insurance obligations as a tenant:

Tenant shall, during the entire term hereof, keep in full force and effect a policy of public liability and property damage insurance *with respect to the leased premises, and the business operated by Tenant* and any subtenants of Tenant in the leased premises . . . . The policy shall name Landlord, any other parties in interest designated by Landlord, and Tenant as insured . . . .

(Lease § 10.01) (Emphasis added.)

Pursuant to the Card Shop's lease obligation, Royal issued a general liability policy to the Card Shop to cover its Minges Brook Mall store and several other Card Shop locations. An addendum to Royal's policy with the Card Shop defined additional insureds as follows:

The following is added to **SECTION II- WHO IS AN INSURED**:

5.    a.    Any person or organization you are required by a written contract, agreement or permit to name as an insured is an insured but only with respect to liability arising out of:

. . .

2.    Premises owned or used by you.

(Royal Ins. Policy "Enhancement Endorsement" § 12).

The Card Shop, along with all of the other tenants of the Minges Brook Mall, was also required by the lease to pay a proportionate share of Minges Creek's cost of maintaining and insuring the common areas of the mall. Minges Creek's insurance policy covering the common areas was issued by Chubb.

The underlying accident that gave rise to the insurance dispute in this case occurred in March of 1999 when Peggy Lampert, a customer of the Card Shop, slipped and fell on ice while walking to her car from the store. Lampert sued Minges Creek, the Card Shop, and a snow removal contractor in Michigan state court. Her complaint alleged as follows:

The accident occurred when Plaintiff Peggy Lampert, as a customer of the ½ Off Card Shop, Inc., began walking toward her car which was located in Defendant Minges Creek LLC's parking lot, and while in the process of leaving the store, slipped and fell on ice, causing her to sustain very serious personal injuries and damages.

The state trial court dismissed the Card Shop from Lampert's suit because the Card Shop did not "legally possess[] the sidewalk area where the fall occurred." Minges Creek was found to have "exclusive dominion and control over maintaining the entire parking area including the sidewalks in front of the ½ Off Card Shop." Following the Card Shop's dismissal, Minges Creek settled the lawsuit with Lampert for $210,000. Chubb, as Minges Creek's insurer, covered this cost as well as the expense of defending against Lampert's claim.

Minges Creek then filed suit against Royal, the Card Shop's insurer. The suit was removed to federal court based on diversity of citizenship. Alleging that it was an additional insured under the Card Shop's policy, Minges Creek sought reimbursement for the $210,000 settlement cost and approximately $26,700 in expenses that were incurred in defending against Lampert's claims. Royal's insurance contract promised to pay all insureds "those sums that the insured becomes legally obligated to pay . . . [and] defend the insured against any 'suit' seeking [bodily injury or property] damages."

After both parties moved for summary judgment, the district court granted judgment in favor of Minges Creek. It held that Minges Creek was an additional insured under the Card Shop's insurance policy issued by Royal and that the accident occurred on premises used by the Card Shop. Thus, even though the Card Shop did not control the common area where the accident occurred, and even though it was dismissed from Lampert's lawsuit, the Card Shop's insurance policy was deemed to cover the claim. According to the district court, this obligated Royal to defend and indemnify Minges Creek. The district court therefore ordered Royal to reimburse Minges Creek for the settlement cost and the litigation expenses for the underlying litigation with Lampert. Royal now appeals.

## II. ANALYSIS

### A.          Standard of review

The district court's grant of summary judgment is reviewed de novo. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.          Applicable law

Both parties agree that because Michigan is the forum state and the place where Royal's insurance policy was written, Michigan law governs the interpretation of the insurance policy. *See Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003) (applying the law of the forum state in diversity cases). The interpretation of an insurance policy is a question of law that is reviewed de novo. *Schmalfeldt v. N. Pointe Ins. Co.*, 670 N.W. 2d 651, 653 (Mich. 2003).

An insurance policy is interpreted in accordance with its terms. *Twichel v. MIC Gen. Ins. Corp.*, 676 N.W.2d 616, 622 (Mich. 2004) (holding that, based on the clear language of the policy at issue, a driver was not covered by his grandfather's insurance). Moreover, a party's "reasonable expectations cannot super[c]ede the clear language of a contract." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 786 (Mich. 2003) (quotation marks omitted).

Insurance policies must be read as a whole, giving meaning to all of their terms. *Auto-Owners Ins. Co. v. Harrington*, 565 N.W.2d 839, 841 (Mich. 1997). If a term is not defined in an insurance policy, the term is "accorded its commonly understood meaning." *Twichel*, 676 N.W.2d at 622. The Michigan Supreme Court employs dictionary definitions to interpret nontechnical terms, but uses specialized dictionaries and caselaw to interpret legal terms of art. *See id.* (referencing dictionary definitions to interpret the term "owner"); *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 194 (Mich. 1999) (distinguishing between legal terms of art, like "equitable remedy," which should be interpreted in accordance with their common law understandings, and colloquialisms, which should be given their ordinary meaning). If language in an insurance policy can reasonably be interpreted in more than one way, the policy will be interpreted against the insurer. *Wilkie*, 664 N.W.2d at 786-87. Courts, however, should not "create ambiguity in an insurance policy where the terms of the contract are clear and precise." *Henderson*, 596 N.W.2d at 193. Unambiguous terms "must be enforced as written," and insurers are not liable for risks that they do not assume. *Id.*

In the present case, the district court held Royal liable for both the expense of litigating Lampert's suit and the ultimate settlement cost. It thus held that Royal had both a duty to defend and a duty to indemnify Minges Creek, a named insured under Royal's policy with the Card Shop. According to the Michigan Supreme Court, "the duty to defend is broader than the duty to indemnify and is properly invoked when claims are even arguably within coverage." *Polkow v. Citizens Ins. Co.*, 476 N.W.2d 382, 384 (Mich. 1991) (quotation marks omitted). Although all doubts regarding whether the duty to defend applies are resolved in favor of the insured, *id.*, "if coverage is not possible, then the insurer is not obliged to provide a defense." *Marlo Beauty Supply, Inc. v. Farmers Ins. Group*, 575 N.W.2d 324, 327 (Mich. 1998) (construing an ambiguous policy against the insurer). We must therefore first determine whether Lampert's suit against Minges Creek was covered by Royal's insurance policy.

## C.       The insurance contract

### 1.       *Was Minges Creek a named insured?*

Because the lease agreement between Minges Creek and the Card Shop required the Card Shop to name Minges Creek as an additional insured, the district court held that Royal was obligated to defend and indemnify Minges Creek. Royal contends, however, that Minges Creek was an additional insured under the Card Shop's policy only with respect to incidents occurring inside of the Card Shop. This is because the "written contract, agreement or permit" requiring the Card Shop to name Minges Creek as an additional insured, as stated in Royal's Insurance Policy "Enhancement Endorsement" § 12, obligated the Card Shop to insure only the "leased premises." (Lease § 10.01)

Royal issued a certificate of liability insurance to Minges Creek, stating that "the certificate holder is listed as an additional insured-Landlord with respect to the property located at [Minges Brook Mall]." Minges Creek therefore qualified as an additional insured under Royal's policy. The scope of Royal's liability to Minges Creek as a named insured, however, must be determined by the "premises owned or used" language in Royal's policy.

### 2.       *Did the accident occur on premises "owned or used by" the Card Shop?*

In order for Royal to be obligated to defend and indemnify Minges Creek, Lampert's accident had to have occurred on "[p]remises owned or used by" the Card Shop. The parties dispute the proper definitions of both the term "premises" and the term "used." Royal first argues that the term premises refers only to the inside of the Card Shop, whereas Minges Creek asserts that the term premises means the Card Shop plus the common areas surrounding the store.

The district court, in following Michigan precedent that instructs courts to generally apply the commonly understood meaning of terms, *see Twichel*, 676 N.W.2d at 622, referenced the dictionary definition of the term premises. Premises is defined by *Merriam Webster's Collegiate Dictionary* 920 (10th ed. 1997), as "a tract of land with the buildings thereon." If the term premises is more appropriately classified as a "term of art," however, reference to a specialized dictionary is appropriate. *Black's Law Dictionary* 1180-81 (6th ed. 1997), is such a specialized dictionary, and it defines premises as follows:

> Land with its appurtenances and structures thereon. Premises is an elastic and inclusive term, and it does not have one definite and fixed meaning; its meaning is to be determined by its context and is dependent upon circumstances in which used, and may mean a room, shop, building, or any definite area.

*Black's Law Dictionary* thus recognizes that the term premises has an elastic and context-specific definition. The district court focused on the first sentence of the definition and concluded that *Black's* supports Minges Creek's claim that the accident is covered by Royal's policy. But the court failed to consider the definition beyond the first sentence, specifically the part stating that the meaning of the term premises "is to be determined by its context and is dependent upon circumstances in which used . . . ." *Id.*

Royal persuasively argues that, throughout the insurance policy, "an intent is clearly shown to rely on the written contract [i.e. the lease] to define the obligation to add the landlord as a named insured, and to define the scope of the obligation owed to that party." It contends that the term premises in the insurance policy is *un*ambiguous because the lease's definition of the term "leased premises" should be deemed to control the meaning of the term premises as used in the policy. A term in a contract is unambiguous if there is only one way to reasonably interpret the term. *See Wilkie*, 664 N.W.2d at 786-87 (defining an ambiguous term in a contract as one where there is more than one reasonable interpretation). Royal argues that because its policy specifically refers to the "written contract, agreement or permit" in its "additional insured" section, the only reasonable interpretation of the term premises is one based on the lease.

We agree that the lease and Royal's policy are inextricably intertwined and should be interpreted in context with each other. Although Minges Creek argues against referring to the lease in order to define the term premises in the policy, Minges Creek's conclusion that the Card Shop *used* the area where Lampert fell is based on the provision of the lease (Lease § 7.03) designating the common areas for use by all of the tenants of the shopping center. Minges Creek cannot have it both ways. The plain language of Royal's policy links it to the lease, and therefore the only reasonable interpretation of "[p]remises owned or used by" the Card Shop is one that is informed by the lease.

Given the lease's provision obligating the Card Shop to insure only the inside of its store, we conclude that the only reasonable interpretation of the term premises comports with the lease's definition of the term "leased premises." The lease defines the leased premises as the 6,796 square feet inside the Card Shop, and does not include the sidewalk where Lampert fell. And the lease obligated the Card Shop to name Minges Creek as an insured only with respect to the "leased premises." Defining the term premises in the insurance policy to include the common areas that the Card Shop was not required to insure strikes us as unreasonable.

The case of *Zurich Insurance Co. v. CCR & Co.*, 576 N.W.2d 392 (Mich. 1997), supports the proposition that terms that might be ambiguous in some contexts can have highly specific and unambiguous meanings in others. *Zurich* posits an example where A contracts with B to pay $X for eagles. *Id.* at 397 n.4. Depending on the context, eagles can unambiguously mean coins if the parties are numismatists, birds if the parties are animal dealers, or scores in an athletic competition

if the parties are golfers. *Id.* In the present case, the context that defines the otherwise ambiguous term premises is not extrinsic evidence, but the plain language of the lease, which is specifically referenced in Royal's insurance policy. This context requires that the definition of premises in the policy be coextensive with the Card Shop's obligation to name Minges Creek as an additional insured.

Because we conclude that the term premises is restricted to the inside of the Card Shop, Lampert's accident outside of the Card Shop is not covered by Royal's policy. We therefore do not have to analyze the definition of the term "used," but wish to reiterate that even Minges Creek looked to the lease to define that term. Moreover, we note that an absurd result would occur if the terms "premises" and "used" were both interpreted according to Minges Creek's definition of premises (the Card Shop and the sidewalk around it) and its expansive definition of used (in which all tenants use the common areas). Under its interpretation, Minges Creek could seek indemnity under Royal's policy even if a patron of another store fell on the common sidewalk. In fact, it could presumably seek coverage as the named insured from every tenant in the shopping center whose policy contained language similar to Royal's. This interpretation is all the more unreasonable in light of Minges Creek having procured a separate insurance policy through Chubb that explicitly covered the common areas. Minges Creek has clearly not advanced a reasonable interpretation of "[p]remises owned or used" by the Card Shop.

For the reasons stated above, we also hold that Royal had no duty to defend against Lampert's claims. Even accepting all of Lampert's allegations as true, Royal's policy does not cover her accident. Royal therefore was not required to defend Minges Creek against the lawsuit by Lampert. *See Marlo Beauty Supply*, 575 N.W.2d 324 at 327 (holding that "if coverage is not possible, then the insurer is not obliged to provide a defense").

At bottom, this case appears to involve an effort by one insurance company (Chubb, the insurer of the common areas) to obtain reimbursement from another insurance company (Royal, the insurer of the Card Shop's leased premises). The only reasonable reading of the documents controlling the relationship between the parties, however, convinces us that Chubb was the proper insurance company to defend and indemnify Minges Creek for Lampert's accident that occurred in the common areas.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case with instructions to dismiss the complaint with prejudice.