**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4350
_____

UPS FREIGHT f/k/a OVERNIGHT TRANSPORTATION COMPANY,
Appellant

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH;
C.C. EASTERN, INC.

UPS FREIGHT f/k/a OVERNIGHT TRANSPORTATION COMPANY,
Appellant

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH;
C.C. EASTERN, INC.

_____

No. 08-4421
_____

UPS FREIGHT f/k/a Overnight Transportation Company

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA;
C.C. EASTERN, INC.

National Union Fire Insurance Company of Pittsburgh, PA,
Appellant

_____

No. 08-4422
_____

UPS FREIGHT f/k/a Overnight Transportation Company

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA;
C.C. EASTERN, INC.

C.C. Eastern, Inc.,
                                        Appellant

UPS FREIGHT f/k/a Overnight Transportation Company

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA;
C.C. EASTERN, INC.

C.C. Eastern, Inc.,
                                        Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1-06-cv-137)
District Judge: Honorable Sean J. McLaughlin

_____

Argued March 7, 2011
_____

Before: Scirica, Ambro and Vanaskie, *Circuit Judges*

(Opinion Filed:  May 3, 2011 )

_____

Avrum Levicoff, Esq. (Argued)

Joshua N. Perlman, Esq.
Melissa A. Walls, Esq.
Levicoff, Silko & Deemer
650 Smithfield Street
Centre City Tower, Suite 1900
Pittsburgh, PA 15222-0000

*Counsel for Appellant/Cross-Appellee UPS Freight f/k/a Overnight Transportation Company*

D. John Travis (Argued)
Timothy J. Fitzgerald, Esq.
Gary L. Nicholson, Esq.
Gallagher Sharp
1501 Euclid Avenue
Bulkely Building, Sixth Floor
Cleveland, OH 44115-0000

Stephen L. Korbel, Esq.
Babst, Calland, Clements & Zomnir
Two Gateway Center
6th Floor
Pittsburgh, PA 15222-0000

*Counsel for Appellee/Cross-Appellant National Union Fire Insurance Company of Pittsburgh, PA*

John W. Burns, Esq.
Dickie, McCamey & Chilcote
Two PPG Place
Suite 400
Pittsburgh, PA 15222-5402

*Counsel for Appellee/Cross-Appellant C.C. Eastern, Inc.*

_____

OPINION OF THE COURT
_____

Vanaskie, *Circuit Judge*.

At issue on these cross-appeals from the District Court's summary judgment rulings is whether National Union Fire Insurance Company of Pittsburgh, PA ("National Union") owes a duty to defend UPS Freight f/k/a Overnite Transportation Company ("Overnite") in a personal injury action under an insurance policy issued by National Union to C.C. Eastern, Inc. ("C.C.") for premises leased to C.C. by Overnite.[1] The District Court concluded that National Union owed a duty to defend Overnite up until the time when it was judicially determined in the personal injury action that the accident did not occur on that part of the premises leased by C.C. Because we find that National Union's policy extends coverage to Overnite for injuries arising from C.C.'s operations, even though the accident occurred on a part of the premises not leased to C.C., we will reverse and direct that judgment be entered in favor of Overnite on the duty to defend issue.

## I.

## A.

Because we write only for the parties, we will set forth only those facts necessary for our analysis. Overnite owns a trucking facility with forty-four loading docks, office facilities, and a tractor-trailer parking lot in Erie, Pennsylvania. On September 23, 1997, it leased to C.C. twelve contiguous loading docks, numbered one through eight, and

---

[1] The caption incorrectly identifies the plaintiff as UPS Freight f/k/a *Overnight* Transportation Company rather than UPS Freight f/k/a *Overnite* Transportation Company, and portions of the caption also omit "PA" from National Union's company name.

forty-one through forty-four, as well as office space in the basement of its building. (J.A. 254, 262.) The lease, in pertinent part, states:

> 9. Maintenance. [C.C.] will be responsible for all maintenance of the Premises [the leased portion of the trucking terminal: loading docks one through eight and forty-one through forty-four, C.C.'s office space, and parking for ten tractor trailers]. . . .
>
> 11. Insurance. At all times during the term of this Lease, [C.C.] agrees to keep in full force and effect broad form general comprehensive public liability and property damage insurance policies, including contractual liability endorsements covering [C.C.]'s obligations under the lease, with respect to the business operated by [C.C.] and to [C.C.]'s occupancy of the Premises, which policies shall name [Overnite] as an additional insured thereunder. . . . All insurance to be carried by [C.C.] shall be primary and not contributory with any similar insurance carried by [Overnite], whose insurance shall be considered excess insurance only. . . .
>
> 17. Indemnity. [C.C.] shall indemnify, defend, and hold [Overnite] harmless from and against any [] suits, judgments, and costs [] asserted against or incurred by [Overnite] in any way arising out of or in connection with: (i) any injury[] to persons [] on or about the Premises, (ii) any failure of [C.C.] to comply with or perform fully the Terms of this Lease, or (iii) any acts or omissions of [C.C.] or of [C.C.]'s employees [] on or about the Premises. Anything to the contrary notwithstanding, [C.C.]'s covenant to indemnify [Overnite] and save it harmless shall not include [Overnite]'s negligence or misconduct.

(*Id.* at 256-58.)

Pursuant to the lease, C.C. obtained a commercial general liability insurance policy issued by National Union. Section II of the policy contains an additional insured endorsement titled "ADDITIONAL INSURED—WHERE REQUIRED UNDER CONTRACT OR AGREEMENT." The endorsement provides:

> Any person or organization to whom [C.C.] become[s] obligated to include under this policy, as a result of any contract or agreement [C.C.] enter[s] into, [] which requires [C.C.] to furnish insurance to that person or organization of the type provided by this policy, but only *with respect to*

5

*liability arising out of [C.C.'s] operations or premises owned by or rented to [C.C.].* However, the insurance provided will not exceed the lesser of:

     1. The coverage and/or limits of this policy, or
     2. The coverage and/or limits required by said contract or agreement.

(J.A. 305) (emphasis added).

## B.

In *Thomas v. Overnite Transportation Co.*, *et al.*, Civil No. 03-14785, filed in the Erie County Court of Common Pleas, plaintiff Donald Thomas ("Thomas"), a C.C. employee, brought suit against a number of defendants, including Overnite and C.C. (the "Underlying Action"). Thomas alleged that on or about January 4, 2002, he fell from a loading dock at the Overnite trucking terminal. (J.A. 93.) Specifically, he alleged that while "walking on the loading dock, which was owned, leased or maintained by the above named Defendants, [] it began to separate from the wall, and Plaintiff fell six feet to the ground, thereby sustaining [] injuries and damages . . . ." (*Id.*) Although Thomas failed to specify the precise location or number of the loading dock where he was injured, he claimed, *inter alia*, that Overnite and/or C.C. "owned, leased or maintained" the premises. (*Id.*) Averring that Overnite "was in control of and/or responsible for the maintenance, upkeep, and condition of the loading dock upon which [] Thomas walked[,]" Thomas asserted that Overnite was negligent and careless with regard to the loading dock's maintenance. (*Id.*) As to C.C., Thomas asserted that either C.C. was in control of and/or responsible for the condition of the loading dock where he was injured or, alternatively, that C.C. "either in its own right or together with one or more of the

6

remaining Defendants were in control of and/or responsible for the maintenance, upkeep, and condition of the loading dock upon which" Thomas walked. (*Id.* at 104-05.)

After conducting discovery in the Underlying Action, it was determined that Thomas was injured on loading dock ten, which C.C. did not lease. Therefore, on November 18, 2005, the Court of Common Pleas issued an order granting summary judgment in favor of a number of defendants, including C.C. (*Id.* at 767.)

C.

On June 19, 2006, Overnite brought a declaratory judgment action in the Western District of Pennsylvania against National Union seeking determinations that National Union was obligated to defend and afford liability coverage to Overnite in the Underlying Action. On October 30, 2006, Overnite filed a Second Amended Complaint, adding C.C. as a defendant and asserting that if National Union was not required to defend and/or indemnify Overnite in the Underlying Action, C.C. was obligated to do so by reason of the lease provision pursuant to which C.C. agreed to have Overnite named as an additional insured under C.C.'s comprehensive liability policy. Following discovery, all parties moved for summary judgment.

On August 25, 2008, the Magistrate Judge assigned to the case issued a Report and Recommendation in which she concluded that National Union owed a duty to defend Overnite in the Underlying Action. The Magistrate Judge recommended that any determination regarding a duty to indemnify be deferred until the Underlying Action had been concluded.

7

On September 22, 2008, in an oral opinion, the District Court declined to adopt the Report and Recommendation. The District Court reasoned that National Union's insurance coverage was limited to the precise parts of the trucking terminal leased to C.C. Because the complaint in the Underlying Action failed to specify the precise location where Thomas sustained his fall, the District Court explained, it was at least arguable that the accident occurred on premises leased to C.C. so that National Union initially had a duty to reimburse Overnite's defense costs in the Underlying Action. Once it was determined, however, that Thomas's fall did not take place on property under C.C.'s control, National Union was no longer required to defend Overnite. Accordingly, the District Court concluded that National Union was not required to indemnify Overnite and was not obligated to reimburse Overnite's defense costs incurred after C.C. was dismissed from the Underlying Action. Additionally, the District Court granted C.C.'s cross-motion for summary judgment because it did not breach its contractual obligations under the lease. Overnite appealed the District Court's judgment, and National Union and C.C. filed cross-appeals.[2]

## II.

The District Court had jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291. "Our standard of review of a grant of summary judgment is plenary." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir. 2008). We apply the same summary judgment standard that

---

[2] C.C.'s opening brief reiterates the arguments advanced by National Union. Accordingly, the discussion in this opinion will be limited to the contentions advanced by National Union and Overnite.

guides the district courts. *Id.* Also, our "review with respect to [a] district court's interpretation of [an] insurance polic[y] is plenary." *N. Ins. Co. of New York v. Aardvark Assocs., Inc.*, 942 F.2d 189, 191 n.2 (3d Cir. 1991).

"Under Pennsylvania law,[3] an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage." *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985) (emphasis in original). "The obligation to defend is determined solely by the allegations of the complaint in the action." *Id.* "Furthermore, if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). When determining the existence of a duty to defend, "the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Id.*

Overnite argues that the District Court erred by finding that National Union did not owe it a duty to defend after C.C. was dismissed from the Underlying Action because

---

[3] The parties are in agreement that state law must be applied in this diversity action, *see Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and that Pennsylvania conflicts of law principles must be followed to determine whether the law of Pennsylvania (where the leased premises are located and the accident occurred) or Michigan (where C.C. maintains its principal place of business and where the National Union policy was issued) governs the substantive issues in this case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). The parties also agree that there is no material conflict between Pennsylvania and Michigan law with respect to the interpretation of the insurance policy at issue here. Accordingly, we will apply Pennsylvania law.

9

the additional insured provision extended coverage to "liability arising out of [C.C.'s] operations or premises [] rented to [C.C.]" (J.A. 305.) Overnite asserts that because Thomas was injured in the course of C.C.'s trucking operations while going from one part of the premises rented to C.C. to another part of the premises rented to C.C.—its office space in the basement of the trucking facility—any liability potentially arises out of C.C.'s operations. Stated otherwise, Overnite claims that but for Thomas being en route to C.C.'s offices as part of his duties to C.C., the accident would not have occurred. Accordingly, Overnite asserts that the terms of the policy dictate that National Union owes a duty to defend even though Thomas's fall did not occur on premises leased to C.C.

National Union submits that the additional insured provision does not cover liability for the Underlying Action because C.C. did not owe any duty to Overnite under the lease agreement in connection with Thomas's mishap. In support of its position, National Union relies on *Minges Creek, L.L.C. v. Royal Insurance Co. of America*, 442 F.3d 953 (6th Cir. 2006). That case is easily distinguishable from the instant matter.

Minges Creek, a mall owner, leased a portion of its property to store tenant Card Shop. *Id.* at 954. The leased premises were "limited to the interior of the store[.]" *Id.* Card Shop was required to name Minges Creek as an additional insured, and maintain an insurance policy "*with respect to the leased premises, and the business operated by Tenant* and any subtenants of Tenant in the leased premises . . . ." *Id.* (emphasis in original). Pursuant to Card Shop's lease obligation, Royal issued a general liability policy to Card Shop to cover its store. *Id.* The policy's addendum defined additional

insured as "[a]ny person or organization you are required by a written contract, agreement or permit to name as an insured is an insured but *only with respect to liability arising out of: . . . (2) Premises owned or used by* [Card Shop]. *Id.* (emphasis added). In *Minges Creek*, the accident triggering the insurance coverage dispute occurred when a patron slipped and fell on ice in a common area outside the Card Shop store.

The Sixth Circuit found that "[t]he scope of Royal's liability to Minges Creek as a named insured [] must be determined by the 'premises owned or used' language in Royal's policy." *Id.* at 957. Thus, Royal was obligated to defend Minges Creek only if the underlying plaintiff's accident "occurred on '[p]remises owned or used by' the Card Shop." *Id.* (bracket in original). Noting that "premises" was more appropriately a "term of art," the court referenced *Black's Law Dictionary*, which recognized that "the meaning of the term premises 'is to be determined by its context and is dependent upon circumstances in which used . . . .'" *Id.* (quoting *Black's Law Dictionary* 1180-81 (6th ed. 1997)). Observing "that the lease and Royal's policy [we]re inextricably intertwined and should be interpreted in context with each other[,]" *id.* at 958, the Sixth Circuit held that Royal's obligations to Minges Creek were limited to accidents occurring on property rented by the Card Shop, and did not extend to common areas, such as the parking lot. Consequently, Royal had no duty to defend the underlying claim against Minges Creek.

As Overnite correctly points out, the additional insured endorsement provision in *Minges Creek* extended coverage "only with respect to liability arising out of [] Premises owned or used by you." *Id.* at 954. In this case, however, the additional insured provision affords coverage "only with respect to *liability arising out of your operations*

11

*or premises* owned or rented to you." (J.A. 305) (emphasis added). Unlike *Minges Creek*, the broader additional insured provision in this case is not limited to a defined area. Rather, Overnite is covered under the policy, not only for liability arising out of premises leased to C.C., but also liability arising out of C.C.'s operations.

It is well settled in Pennsylvania that "'arising out of' means causally connected with, not proximately caused by. 'But for' causation, i. e., a cause and result relationship, is enough to satisfy this provision of [an insurance] policy." *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (Pa. 1961).

Contrary to National Union's assertions, there is a causal relationship between Overnite's operations and Thomas's injury. Thomas was injured while engaged in Overnite's operations as an employee when he walked from his truck to Overnite's office located in the basement of the facility. But for the fact that Thomas was engaged in activities that supported Overnite's operations, he would not have been injured on the loading dock.

Therefore, the complaint in the Underlying Action viably alleges an injury that potentially comes within the policy.[4] Accordingly, National Union owes Overnite a duty to reimburse Overnite's defense costs throughout the Underlying Action.[5]

---

[4] National Union argues that a duty to defend is defeated by the fact that the additional insured provision stipulated that "the insurance provided will not exceed the lesser of . . . [t]he coverage and/or limits required by [the Overnite/C.C. lease]." Asserting that under the lease C.C. has no obligation to indemnify Overnite against Overnite's own negligence, National Union argues that its policy issued to C.C. likewise cannot provide coverage to Overnite. Contrary to National Union's argument, however, the lease did not define the scope of the required insurance coverage in terms of C.C.'s indemnification obligation. Instead, it obligated C.C. to obtain "broad form general

12

III.

For the foregoing reasons, we will vacate the District Court's partial grant of summary judgment and declaratory relief in favor of National Union, and remand for further proceedings consistent with this opinion.[6]

---

comprehensive public liability and property damage insurance policies . . . with respect to the business operated by [C.C.] and to [C.C.]'s occupancy of the Premises, which policies shall name [Overnite] as an additional insured thereunder." National Union has not shown how its coverage and policy limits exceed that which was required of C.C. by the lease.

[5] It would be premature for this Court to address whether National Union is obligated to indemnify Overnite, as a judgment has yet to be entered in the Underlying Action. *See C.H Heist Caribe Corp. v. Am. Home Assurance Co.*, 640 F.2d 479, 483 (3d Cir. 1981) (finding that a decision concerning indemnity was "premature at this stage of the proceedings"). Additionally, in light of our holding, it is clear that National Union's cross-appeal asserting that it *never* had a duty to defend Overnite is without merit.

[6] Because Overnite prevailed on its request for a declaration that National Union is required to reimburse its defense costs in the Underlying Action, there is no merit to its alternative request that C.C. be required to pay its defense costs. Accordingly, the judgment in favor of C.C. will be affirmed.